UNITED STATES of America, Appellee,

v.

Ronnie E. PRESCOTT, Appellant.

UNITED STATES of America, Appellee,

v.

Larry BOSLEY, Appellant.

Nos. 93–4011, 93–4014.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1994.

Decided Aug. 25, 1994.

Michael Harmon, Hot Springs, AR, argued, for appellants.

William Cromwell, Fort Smith, AR, argued (P.K. Holmes III and Steven N. Snyder, on the brief), for appellee.

Before LOKEN, Circuit Judge, FRIEDMAN * and JOHN R. GIBSON, Senior Circuit Judges.

JOHN R. GIBSON, Senior Circuit Judge.

Ronnie Prescott and Larry Bosley appeal from their convictions on amphetamine charges, 21 U.S.C. § 841(a)(1) (1988), arguing that there was not sufficient evidence to convict.** Prescott was convicted of eight counts ranging from distribution and manufacture of a controlled substance to money laundering. Bosley was convicted of only one count, of aiding and abetting the manufacture of amphetamine. Both defendants argue that the district court erred in denying their motions for acquittal, because the government did not adduce sufficient evidence. We affirm the judgment of the district court.[1]

## I.

Prescott attacks the sufficiency of the evidence on Counts I, VI and VII, which charge distribution of a controlled substance, and on Count IV, which charges aiding and abetting the manufacture of a controlled substance.

"In reviewing a denial of a motion for acquittal, 'we must view the evidence in the light most favorable to the government,'" giving the government the benefit of all reasonable inferences. *United States v. Springer*, 831 F.2d 781, 783–84 (8th Cir.1987) (citations omitted), *cert. denied*, 485 U.S. 938, 108 S.Ct. 1117, 99 L.Ed.2d 277 (1988); *see Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). If, so viewed, the evidence is such that the jury must have a reasonable doubt about any essential element of the crime, the motion should be granted. *Springer*, 831 F.2d at 784.

Count I charged Prescott with distribution of amphetamine "on or about November 1989." Prescott complains that the government's proof was inadequate as to the date of the offense. The date not being an element of the offense, *see United States v. Sanchez*, 961 F.2d 1169, 1175 (5th Cir.) (essential elements under 21 U.S.C. § 841(a)(1) are knowing possession with intent to distribute), *cert. denied*, — U.S. ——, 113 S.Ct. 330, 121 L.Ed.2d 248 (1992), "'a variance between the date in the indictment and the proof is not fatal if the proof shows that the

---

* The HONORABLE DANIEL M. FRIEDMAN, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

** The appeal of Teresa Prescott, No. 93–4012, was originally consolidated with the instant appeals but was severed after argument.

1. The Honorable H. Franklin Waters, Chief Judge for the United States District Court of the Western District of Arkansas.

acts charged were committed on a date within the statute of limitations and prior to the return date of the indictment.'" *United States v. Plenty Arrows,* 946 F.2d 62, 65 (8th Cir.1991) (citations omitted) (emphasis deleted); *see United States v. Collins,* 690 F.2d 670, 673 (8th Cir.1982); *United States v. Brewer,* 1 F.3d 1430, 1437 (4th Cir.1993). Here, the indictment was dated May 12, 1993 and the statute of limitations was five years. 18 U.S.C. § 3282 (1988). The witnesses at trial testified that Prescott was selling amphetamines in "late 1989," and that it was in "November of '89, probably." A witness also said, "I guess it was sometime in November," referring to 1989. This is adequate proof that the transactions took place within the limitations period and before indictment, and that they were not so remote from the date in the indictment as to mislead the defendant. *See Brewer,* 1 F.3d at 1437.

■ Count IV charged Prescott with aiding and abetting in the manufacture of amphetamine. Again, Prescott claims that the government failed to prove the April 1992 date charged in the indictment. The witness on Count IV, Rick Ross, testified that he first met Prescott in the summer of 1991. He testified that he began buying amphetamine directly from Prescott in April 1992 and that this amphetamine was either manufactured by Prescott or by certain other named individuals for Prescott. He also described his own and Larry Bosley's cooperation in manufacturing the drug at Ross' home. He then went on to describe his participation in another amphetamine manufacturing lab masterminded by Prescott in August or September 1992. The chronology of his testimony adequately establishes the time of the manufacturing operation within the parameters discussed above.

Count VI charged distribution of amphetamine on or about September to October 1992. Count VI was proved by evidence of transactions with Steven Kelley. Again, Prescott says the time was not proved. Kelley testified that in "September of last year" (i.e., 1992), Prescott provided Kelley with amphetamine weekly for "about two or three weeks in a row," followed by a hiatus and one final sale. Prescott's point is not well taken.

■ Count VII alleges distribution of amphetamine on or about November 1991. Prescott argues that evidence at trial on this count tended to prove that the transactions occurred in 1992, not 1991. Under the principles we have discussed above, the discrepancy Prescott alleges would not affect the validity of his conviction.

## II.

■ Larry Bosley argues that the time of the transaction charged in Count IV (April 1992) was not proved. Rick Ross testified that he met Bosley in 1989 or 1990. He said that as long as Bosley and Prescott were working together he bought his amphetamine from Bosley, but that Bosley and Prescott "split ways and I just went directly to Ronnie" after that. He identified the time when he began dealing directly with Prescott as "April, early spring, of '92," which supports the conclusion that Bosley and Prescott "split ways" about that time, and that deals involving both of them would have taken place around or before "early spring of '92." Ross told of Bosley's involvement in the amphetamine laboratory, including details of Bosley's duties and remuneration. These facts, taken together, support the conclusion that Bosley was involved in operating a laboratory on or about the date charged. Moreover, in our discussion of Count IV in connection with Prescott, we have already concluded that the chronology of Ross' testimony adequately establishes the time of the manufacturing operation within the parameters approved in *Plenty Arrows. See* 946 F.2d at 65.

We affirm the judgment of the district court.