# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1300

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
|  | * | |
| Appellee, | * | |
|  | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
|  | * | District of Arkansas |
| Jimmy Lee Stuckey, Jr., | * | |
|  | * | |
| Appellant. | * | |

_____

Submitted: May 9, 2000

Filed: August 9, 2000

_____

Before BOWMAN, LOKEN, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Jimmy Lee Stuckey, Jr., appeals both his conviction for being a felon in possession of a firearm, and the sentence he received. Stuckey challenges the conviction by claiming the district court erred during jury deliberations when it gave a supplemental instruction that stated a "person who has been convicted of a felony may not knowingly possess a firearm at any time," even though the indictment had charged possession "on or about" a date certain. Stuckey challenges the sentence by claiming that four prior drug convictions stemming from a military court martial should

not have been used to enhance his sentence as an armed career criminal. We affirm the conviction, but reverse and remand for resentencing.

## BACKGROUND

Stuckey was charged in a two-count indictment, the first count of which charged him with being a felon in possession of a firearm "on or about December 25, 1998." The second count charged Stuckey with making a false statement to a gun dealer at the time he purchased that firearm. He pleaded guilty to the false statement charge, but went to trial on the possession charge.

At trial, the jury learned that Stuckey, a resident of Memphis, Tennessee, was delivering presents to his relatives in Arkansas on Christmas Day. He was driving over ninety miles per hour down Interstate 40 when stopped by Arkansas state trooper Sam Koons. Stuckey was driving a car owned by Sheila Gray, his girlfriend.

Before Stuckey pulled over, Trooper Koons noticed him moving around in the car, leaning over as if trying to hide something. When Koons approached the vehicle to ask for license, registration, and proof of insurance, Stuckey reached into a duffle bag on the passenger's seat to get his wallet. In the process, Trooper Koons observed a gun clip in the duffle bag. Koons subsequently searched the vehicle and discovered a handgun under the driver's seat. The gun clip from the duffle bag fit the handgun found under the driver's seat. The other items in the duffle bag were men's clothes.

Gray, the girlfriend, testified that the car, the gun, the duffle bag, and all the contents of the duffle bag, belonged to her. Koons testified that, on the night of the arrest, Gray came to the police station and was asked if she owned any guns. She told Koons that she owned a long gun (gesturing to indicate the length of her gun), but that she did not own a short gun. Gray denied this conversation at trial.

Although Stuckey pleaded guilty to the false statement charge arising out of the purchase of the firearm, the district court allowed evidence related to Stuckey's purchase to prove his subsequent possession. Thus, the jury learned that the handgun was traced to a sale made in February 1998 by Ray Abel, a federal firearms license holder. Stuckey was the purchaser.

During jury deliberations, the jury sent a note to the court asking: "On Element Number 2, knowingly possessed a firearm, does this mean knowingly at any time or at the time of his arrest?"[1] The district court then gave the jury a supplemental instruction indicating: "A person who has been convicted of a felony may not knowingly possess a firearm at any time." Defense counsel objected to the instruction: "I would object to the response that knowingly possessed a firearm pertained to any time because the evidence as put on today, and in the indictment itself, it's on the date of arrest, December 25, 1998 . . . [and] it should pertain to that date." The jury found Stuckey guilty.

At the time of sentencing, the court found that Stuckey was subject to an enhanced sentence under 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4 as an armed career criminal, based on four predicate "serious drug offenses." All four prior drug offenses stemmed from the same general court martial in a military court on April 10, 1989, under which Stuckey was found to have:

(a) distributed 4.52 grams of marijuana on August 26, 1988;
(b) distributed 66.24 grams of marijuana on September 16, 1988;
(c) possessed an additional 3.25 grams of marijuana with intent to distribute on September 16, 1988; and
(d) distributed 2.086 grams of cocaine on September 14, 1988.

Each offense carried a maximum sentence of 15 years under military law.

---

[1]Stuckey was arrested December 25, 1998, the same date charged in the indictment.

Application of the armed career criminal provisions substantially increased Stuckey's sentencing range under the guidelines. Without the enhancement, the guideline range would have been 51 to 63 months. With the enhancement, the guideline range became 188 to 235 months. Stuckey was sentenced to 188 months in prison on the possession charge, to be served concurrently with a sentence of 120 months on the false statement charge.[2]

## DISCUSSION

### I.     The Conviction

The first issue we must decide is whether the supplemental instruction given by the district court requires us to reverse the conviction and remand for retrial. Normally, we review instructions given to the jury under an abuse of discretion standard. See, e.g., United States v. Smith, 104 F.3d 145, 148 (8th Cir. 1997). But where the issue is whether an instruction amounts to a "variance," the issue we ultimately decide to address,[3] a different standard of review applies. Whether a variance exists, and, if so, whether that variance prejudiced Stuckey, are questions of law that we review de novo. See, e.g., United States v. Portela, 167 F.3d 687, 700 (1st Cir. 1999); United States v. Williamson, 53 F.3d 1500, 1512 (10th Cir. 1995). A variance that does not result in actual prejudice to the defendant is harmless error, and does not require reversal of the conviction. See United States v. Begnaud, 783 F.2d 144, 148 (8th Cir. 1986).

---

[2]Absent the enhancement, the guideline range on the false statement charge would also have been 51 to 63 months.

[3]We acknowledge some misgivings about limiting Stuckey's claim of error solely to a variance issue. Yet we feel obligated to restrain from fully addressing all the potential issues due to the manner in which Stuckey raised the  supplemental jury instruction issue before us and in the district court.

The supplemental instruction given in this case was not ideal. Although the instruction was an accurate statement of the law, its technical accuracy can not be viewed in a vacuum. Instead, the propriety of giving the instruction must be viewed in relation to the specific context in which the request for supplemental instruction arose, and in relation to the charging language of the indictment.

The jury's request for additional instruction was, presumably, triggered by the fact that the government introduced evidence of possession relating to periods of time other than the date of arrest alleged in the indictment. Most notably, there was evidence that Stuckey also possessed the firearm at the time of its purchase.[4]

Under these circumstances, the district court should have used an instruction similar to the one used in United States v. Brody, 486 F.2d 291 (8th Cir. 1973). Brody also involved a firearm possession charge where, during deliberations, the jury asked a question about the timing of the defendant's possession: "Does Count One of the Indictment mean at the time of the arrest or possession of the gun at any previous time covered by the evidence at trial?" Brody, 486 F.2d at 292. The court responded:

> Count One of the indictment in this case charges that the offense charged therein was committed "on or about the 7th day of July, 1972." The proof need not establish with certainty the exact date of the alleged offense. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

Id.

---

[4]Inferences could also fairly be drawn that Stuckey had possession of the firearm at times in between the date of purchase and the date of arrest.

We approved the instruction, holding that the "on or about" charge in the indictment could encompass possession at times other than the day of actual arrest. See id. In the instant case, the district court neglected to give a Brody instruction. If the court *had* given an instruction like the one used in Brody, then the jury could have determined whether the evidence in this trial was sufficient to show that possession occurred at a time "reasonably near" the date alleged in the indictment. The jury should have had an opportunity to so determine.

Deciding that a different instruction should have been given does not conclude our inquiry, however. We must determine whether the supplemental instruction that was in fact given requires reversal. In United States v. Ford, 872 F.2d 1231 (6th Cir. 1989), the Sixth Circuit addressed that question as applied to a supplemental instruction very similar to the one given here. Ford also involved a firearm possession charge where the evidence demonstrated possession at times other than the date of arrest alleged in the indictment. The first period of possession pertained to the purchase of the gun on November 2, 1986. A second period of possession was on August 8, 1987, when Ford was alleged to have shot himself in the hand with the firearm. A third period of possession was at the time of Ford's arrest during a domestic altercation on September 28, 1987. This third date was the "on or about" date charged in the indictment. See Ford, 872 F.2d at 1232-34.

In its initial instructions, the Ford trial court gave an instruction similar to that used in Brody: proof of possession at a time "reasonably near" the date alleged in the indictment was sufficed to convict. See id. at 1234. When the jury asked for further instruction as to what constituted a date "reasonably near" the date charged in the indictment, the court gave a supplemental instruction which indicated that a person may not possess a firearm *at any time* after being convicted of a felony. The court further instructed that proof of Ford's possession could encompass any time between the date of purchase and the date of arrest. See id.

-6-

The Sixth Circuit considered whether the supplemental instruction was (1) a response to a variance in the evidence, not amounting to reversible error unless the defendant showed prejudice; or (2) a constructive amendment of the indictment, amounting to reversible error per se because it infringed upon the Fifth Amendment's guarantee that no person shall be held to answer for a crime not presented to, and indicted by, a grand jury. See id. at 1235. The court concluded that the instruction was a constructive amendment, because it essentially altered the elements of the offense set forth in the indictment, allowing the jury to convict Ford of a crime other than the one charged in the indictment. See id. at 1236.

We have frequently discussed the difference between a variance in the evidence and a constructive amendment of the indictment, most recently in United States v. Novak, ___F.3d ___, ___, 2000 WL 781077 at *5 (8th Cir. June 20, 2000), and United States v. Emery, 186 F.3d 921, 927-28 (8th Cir. 1999). The basic difference between a constructive amendment and a variance is this: a constructive amendment changes the charge, while the evidence remains the same; a variance changes the evidence, while the charge remains the same. See Novak, 2000 WL 781077 at *5; Emery, 186 F.3d at 927-28.

The difference between the two concepts is significant. A constructive amendment is reversible error per se, but a variance is subject to the harmless error rule. That difference stems from the underlying constitutional rights affected. A constructive amendment directly violates the Fifth Amendment right not to "be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. The Supreme Court long ago recognized the damaging effect of modifications to a grand jury charge:

> If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been

called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says "no person shall be held to answer," may be frittered away until its value it almost destroyed.

Ex Parte Bain, 121 U.S. 1, 10 (1887).

Conversely, a variance in the evidence affects the defendant's right to adequate notice, that is, the Sixth Amendment right "to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. The charging document does not change, only the evidence against which the defendant expected to defend. As a result, a variance does not require reversal per se, because a court must still examine whether or not the variance prejudiced the defendant's right to notice. Absent prejudice, the variance is harmless error.[5]

The distinction between a constructive amendment and a variance is clear in theory, but often blurred in application. This case presents a good example. The district court's supplemental instruction could be viewed as a change in the charge itself, thereby allowing the jury to convict Stuckey of an offense (possession of the firearm at the time of purchase) other than that charged in the indictment (possession

---

[5]A constructive amendment could also affect a person's Sixth Amendment notice rights, but its direct violation of the Fifth Amendment grand jury right obviates the need to perform a prejudice analysis. It bears mention that when the right to a grand jury is not at issue (such as in the habeas context under 28 U.S.C. § 2254 where the Fifth Amendment grand jury right does not apply to the states), a constructive amendment would *not* always result in reversible error. A prejudice analysis would have to be performed to determine whether a defendant's Fourteenth Amendment due process or notice rights were materially affected. See, e.g., Lucas v. Odea, 179 F.3d 412, 417 (6th Cir. 1999) (concluding that a constructive amendment prejudiced a defendant's Fourteenth Amendment right to notice of the charges against him).

at the time of arrest). On the other hand, the supplemental instruction could be viewed as merely a response to a change in the evidence, since the prosecution offered evidence of possession on dates other than those charged in the indictment.

Normally, we would decide whether to examine this supplemental instruction as a constructive amendment, or as a variance. In this case, however, we feel constrained to limit our analysis to the extent that the issue was raised in the trial court and on appeal, for "[i]t is not this court's job to research the law to support an appellant's argument." Lusby v. Union Pac. R.R. Co., 4 F.3d 639, 642 (8th Cir. 1993) (quoting United States v. Papia, 910 F.2d 1357, 1363 (7th Cir. 1990)).

At trial, defense counsel objected to the supplemental instruction by stating, "I would object to the response that knowingly possessed a firearm pertained to any time because the evidence as put on today, and in the indictment itself, it's on the date of arrest, December 25, 1998 . . . [and] it should pertain to that date." That argument perhaps sufficed to preserve the objection for review on appeal without subjecting it to the plain error standard of review. See Fed. R. Crim. P. 30 (requiring party to state "distinctly the matter to which that party objects and the grounds of the objection"); see also Cross v. Cleaver, 142 F.3d 1059, 1068 (8th Cir. 1998) (holding that objection must bring into focus the precise nature of the alleged error and state distinctly the grounds for objection; if not, issue is reviewed on appeal for plain error only). But the objection did not precisely identify the error as a violation of Stuckey's Fifth Amendment rights.

Stuckey challenges the propriety of the supplemental instruction on appeal, but only in the most perfunctory manner. Stuckey does not argue that the supplemental instruction amounted to a constructive amendment of the indictment. Nor does he identify the instruction as an infringement of his constitutional rights under the Fifth or Sixth Amendments. Indeed, Stuckey neglected to develop any constitutional arguments on appeal. Cf. Voss v. Shalala, 32 F.3d 1269, 1272 (8th Cir. 1994) (declining to

address a constitutional challenge to a statute where the constitutional argument was undeveloped on appeal).

Stuckey's opening brief cites no legal authority in its discussion of the supplemental instruction. Stuckey merely concludes that the instruction was "clearly an error of law." The only legal authority referred to by Stuckey, in his reply brief, cites the general principle that supplemental instructions must be "accurate, clear, neutral, and non-prejudicial." United States v. Suppenbach, 1 F.3d 679, 683 (8th Cir. 1993).

We have encountered some difficulty identifying the legal principle or doctrinal framework upon which Stuckey relies. He has asked us simply to determine whether the supplemental instruction was "non-prejudicial."

We conclude that Stuckey's request cannot be interpreted as raising a constructive amendment issue, because the resolution of that issue would not entail a "prejudice" analysis. As explained above, a constructive amendment violates a defendant's Fifth Amendment grand jury right per se, that is, irrespective of prejudice. But a prejudice analysis *is* required under the variance doctrine. The presence or absence of prejudice in an instruction implicates a Sixth Amendment concern — whether the government properly informed a defendant of the "nature and cause of the accusation." U.S. Const. amend. VI. We therefore conclude that Stuckey's challenge rests solely upon the variance doctrine.

Having reached this point in our analysis, we conclude that any variance in this case did not result in material prejudice. Time is not a material element of a criminal offense unless made so by the statute creating the offense. See Ledbetter v. United States, 170 U.S. 606, 612 (1898). The date of the offense is not a material element of a firearm possession charge under 18 U.S.C. § 922(g)(1).

When the date of the offense is not an element of the charge, we have held on many occasions that a variance between the indictment date and the proof at trial is not fatal so long as the acts charged were committed within the statute of limitations period, and prior to the return date of the indictment.  See United States v. Summers, 137 F.3d 597, 601 (8th Cir. 1998); United States v. Prescott, 33 F.3d 922, 923-24 (8th Cir. 1994); United States v. Plenty Arrows, 946 F.2d 62, 65 (8th Cir. 1991); United States v. Collins, 690 F.2d 670, 673 (8th Cir. 1982); United States v. Joyner, 539 F.2d 1162, 1164-65 (8th Cir. 1976); Jacobs v. United States, 395 F.2d 469, 474 (8th Cir. 1968); see also United States v. Reece, 547 F.2d 432, 435 (8th Cir. 1977) (holding that a one-year variance between indictment and proof at trial was harmless and did not affect defendant's substantial rights, where defendant did not argue that he was prevented from presenting his defense properly, unfairly taken by surprise, or exposed to double jeopardy).

Similarly, in United States v. Nunez, 668 F.2d 1116 (10th Cir. 1981), the Tenth Circuit addressed a possession charge under 18 U.S.C. § 472 (possession of counterfeit obligations).  The court held that as long as the proof relating to the time of possession fell within the statute of limitations periods, any variance between the date alleged in the indictment and the proof at trial could be disregarded.  See Nunez, 668 F.2d at 1127.

Variances between the date alleged in the indictment and the proof at trial have been identified as material only when alibi is a defense.  See, e.g., United States v. Goodrich, 493 F.2d 390, 393-94 (9th Cir. 1974) (discussing cases that found reversible error where a trial court instructed the jury that the offense could occur on dates other than those charged in the indictment even though alibi was raised as a defense); see also Nelson v. Solem, 795 F.2d 636, 637 (8th Cir. 1986) (discussing the propriety of giving an "on or about" instruction when alibi is a defense).

Finally, the evidence that Stuckey possessed the firearm on December 25, 1998, the date alleged in the indictment, was very strong. Cf. United States v. Snider, 720 F.2d 985, 990 (8th Cir. 1983) (holding that in some cases evidence of a defendant's guilt on a possession charge is so strong that conviction should be affirmed despite a prejudicial variance). Prior to being stopped, Stuckey was observed leaning over as if trying to hide something in the car. After being stopped, Stuckey reached into a duffle bag on the seat next to him to retrieve *his own* wallet, strongly suggesting that the duffle bag was his. The duffle bag also contained *men's,* not *women's*, clothing. The gun clip, also in the duffle bag, fit the handgun found underneath the driver's seat, the same handgun Stuckey himself had purchased just a few months earlier. Although Stuckey's girlfriend, Gray, claimed at trial that the handgun, the duffle bag, and all the contents of the duffle bag belonged to her, Trooper Koons also testified that on the night of the arrest Gray denied owning any "short" guns.

Time was not a material element of this crime, the evidence of possession was within the statute of limitations period, alibi was not an issue, and the evidence in support of the conviction was strong. We therefore conclude that any variance that existed as a result of the evidence proffered at trial, or that was created by the district court's supplemental instruction, did not materially prejudice the appellant. We affirm the conviction.

## II.    The Sentence

The next issue is whether Stuckey's four prior drug convictions for violating Article 112a of the Uniform Code of Military Justice, 10 U.S.C. § 912a, constitute "serious drug offenses" under 18 U.S.C. § 924(e).[6] We review this matter of statutory

---

[6]Section 924(e) provides, in pertinent part, as follows:

(e)(1) In the case of a person who violates section 922(g) . . . and has

-12-

interpretation de novo.  See United States v. Williams, 136 F.3d 547, 550 (8th Cir. 1998).

The district court enhanced Stuckey's sentence under the armed career criminal provisions after concluding that his four prior military drug conviction were "serious drug offenses."  However, Congress did not include a reference to military law within § 924(e)(2)(A)'s definition of "serious drug offense."  Subparagraph (e)(2)(A)(i) refers to three specific federal acts  — the Controlled Substance Act,  the Controlled Substances Import and Export Act, and the Maritime Drug Law Enforcement Act —

> three previous convictions by any court referred to in section 922(g)(1) . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be . . . imprisoned not less than fifteen years . . . .
>
> (2) As used in this subsection -
>
> (A) the term "serious drug offense" means -
>
> (i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C. App. 1901 et seq.), for which a maximum term of imprisonment of ten years or more is prescribed by law; or
>
> (ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law.

18 U.S.C. § 924 (e).

but *not* the Uniform Code of Military Justice. Under the plain and unambiguous language of the statute, the district court erred in considering Stuckey's military drug convictions for enhancement purposes.

The government cites <u>United States v. Martinez</u>, 122 F.3d 421 (7th Cir. 1997), for the proposition that a military drug conviction should constitute a "serious drug offense" for enhancement purposes. The issues addressed in <u>Martinez</u> were (1) whether the reference to convictions in "any court" at paragraph (e)(1) of the statute included convictions in military court, and (2) whether a military conviction for housebreaking constituted a "violent felony" under subparagraph (e)(2)(B) of the statute. <u>See</u> <u>Martinez</u>, 122 F.3d at 423-24. The Seventh Circuit held that military court convictions could be used as predicate offenses for enhancement purposes, because the statute's broad reference to "any court" included military courts. The Seventh Circuit also held that a "housebreaking" offense under military law fit the generic definition for burglary, and thus constituted a "violent felony" under subparagraph (e)(2)(B) of the statute. <u>See</u> <u>id.</u>

Relying on <u>Martinez</u>, the government argues it is absurd that military convictions count as predicate offenses under paragraph (e)(1), but that a military drug offense can never constitute a "serious drug offense" under subparagraph (e)(2)(A). The government also suggests it is absurd that certain military convictions count as "violent felonies" under subparagraph (e)(2)(B), but that a military drug offense can never constitute a "serious drug offense" under subparagraph (e)(2)(A). The government urges us not to give the statute a "literal" interpretation, and to ignore the fact that the statute's definition of "serious drug offense" does not refer to the Uniform Code of Military Justice.

We are unpersuaded by that argument, and cannot ignore our obligation to read the statute literally. <u>Martinez</u> did not address what offenses may constitute "serious drug offenses" under subparagraph (e)(2)(A). Furthermore, for a conviction to count

as a predicate offense under paragraph (e)(1), it must be *both* a conviction by "any court" referred to therein *and* either a "serious drug offense" under (e)(2)(A) or a "violent felony" under (e)(2)(B). Thus, the mere fact that we are dealing with military drug convictions in this case only gets the government half-way home; we must still determine whether or not the convictions are "serious drug offenses" under (e)(2)(A). Finally, we find no absurdity in the fact that Congress defined "violent felony" in a manner that allowed the inclusion of military convictions, while defining "serious drug offense" in a manner that did not. Any claimed inconsistencies in the statute should be the subject of legislative, not judicial, action.

Congress defined two general types of predicate offenses that would trigger the enhancement provisions of § 924(e): serious drug offenses and violent felonies. But Congress adopted different structural frameworks for defining those predicate offenses.

The term "violent felony" is initially defined as "any crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 924(e)(2)(B). The statute then limits that broad definition to two categories: (1) those crimes that have "as an element the use, attempted use, or threatened use of physical force against the person of another"; and (2) those crimes that are "burglary, arson, or extortion, involve[] use of explosives, or otherwise involve[] conduct that presents a serious potential risk of physical injury to another." Id. at (e)(2)(B)(i) & (ii). This has been referred to as a "categorical approach" to the definition of "violent felony." See United States v. Taylor, 495 U.S. 575, 588 (1990).

Instead of using a "categorical approach" to define "serious drug offense," Congress used what we will refer to as a "listing approach." Congress did not initially define "serious drug offense" in a broad manner, as it did with "violent felony." Instead, from the outset, Congress defined the term more precisely by specifically listing the federal provisions *under which* a serious drug offense might fall, see 18

U.S.C. § 924(e)(2)(A)(i), and then added to the list certain offenses under State law. See id. at § 924(e)(2)(A)(ii). The Uniform Code of Military Justice, 10 U.S.C. §§ 801-946, is conspicuously absent from the specifically enumerated statutes.

Under these circumstances, Congressional intent to exclude from the enhancement provisions any drug offenses under the Uniform Code of Military Justice is inferred. Under the principle of *inclusio unius est exclusio alterius*, the fact that Congress listed certain statutes is an indication that it intended to exclude unlisted statutes. See United States v. Darden, 70 F.3d 1507, 1524-25 (8th Cir. 1995) (holding that where Congress specifically listed a number of drug-related offenses that constitute predicate acts for purpose of the RICO statute, Congress meant that offenses not specifically listed would not constitute predicate acts).

Congress knows how to use more inclusive language for sentence enhancement purposes when it so chooses. For example, prior to amendment in 1994, two sentence enhancement provisions for repeat drug offenders, 21 U.S.C. §§ 960(b)(2) and 962(b), broadly included all drug-related felony under *any* federal, state, or foreign law as a prior offense for enhancement purposes.

Section 960(b)(2), as then written, provided:

> If any person commits such a violation after one or more prior convictions for an offense punishable under this paragraph, or for a felony under any other provision of this subchapter or subchapter II of this chapter or *other law of a State, the United States, or a foreign country* relating to narcotic drugs . . . such person shall be sentenced to a term of imprisonment of not less than 10 years and not more than life imprisonment.

21 U.S.C. §§ 960(b)(2) (1988), *amended by* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, §§ 90105(b), 108 Stat. 1796, 1987-88 (1994) (recodified at 21 U.S.C. §§ 960(b)(2) (1994)) (emphasis added).

Likewise, section 962, as then written, provided:

(a) Any persons convicted of any offense under this subchapter is, if the offense is a second or subsequent offense, punishable by a term of imprisonment twice that other authorized . . .

(b) For purposes of this section, a person shall be considered convicted of a second or subsequent offense if, prior to commission of such offense, one or more prior convictions of him for a felony under any provision of this subchapter or subchapter I of this chapter or *other law of a State, the United States, or a foreign country* relating to narcotic drugs.

21 U.S.C. §§ 962(b) (1988), *amended by* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, §§ 90105(b), 108 Stat. 1796, 1988 (1994) (recodified at 21 U.S.C. §§ 962(b) (1994)) (emphasis added).

A military drug conviction would fall under that broader definition, because the Uniform Code of Military Justice is an "other law of . . . the United States." However, military drug convictions are *not* included within the more precise definition used by Congress at § 924(e)(2)(A)(i) & (ii).

In United States v. Tremble, 933 F.2d 925 (11th Cir. 1991), the Eleventh Circuit addressed the fact that the prior versions of 21 U.S.C. §§ 960 and 962 used more-encompassing language than the statute at issue here, specifically referring to § 924(e)(2)(A)(ii) to illustrate that Congress knew how to use more precise, limiting language when it wanted:

[T]he existence of these other sentence-enhancement provisions [18 U.S.C. § 924(e)(2)(A)(i) & (ii) and U.S.S.G. § 4B1.2] requiring more than simple possession suggests that at the time Congress enacted sections 960(b)(2) and 962(b), that legislative body knew how to limit the

-17-

types of prior convictions available as predicates for sentence enhancement *by using more precise definitions.*

Tremble, 933 F.2d at 929-30 (emphasis added).

Congress may have had good reason for not including military drug convictions on § 924(e)'s "serious drug offense" list. The maximum penalty a soldier might receive for a drug offense in a general court martial is disproportionate to the maximum penalty a civilian might receive for the same conduct. For example, possession of marijuana with intent to distribute, in *any* amount (no matter how small) is subject to fifteen years confinement in a general court martial. See Punitive Articles ¶ 37(e)(2)(A), Manual for Courts-Martial United States 1984 (1994 ed.). In federal civilian cases, however, possession of marijuana with intent to distribute, in an amount up to 50 kilograms, is only subject to a maximum term of five years imprisonment. See 21 U.S.C. § 841(b)(1)(D).

Congress intended that only "serious drug offenses" (those involving drug quantities large enough to trigger a maximum sentence of ten years or more) would be used for enhancement purposes under § 924(e). Military law is inconsistent with that intent, since military charges involving small amounts of drugs can still be treated very seriously.[7]

---

[7]For example, Stuckey's court martial involved relatively small amounts of marijuana (4.52 grams, 66.24 grams, and 3.25 grams). Even if a charge under the Controlled Substances Act involved that total amount (74.01grams), it would not trigger § 924(e)'s enhancement provisions; indeed, it would take in excess of *675 times* as much marijuana to subject someone to a sentence greater than ten years.

The district court erred by using Stuckey's military drug convictions for enhancement purposes.[8]  Therefore, we affirm the conviction, but remand for resentencing consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[8]Having concluded that the language of the statute is plain and unambiguous, we need not consider whether the rule of lenity would also require the sentence to be reversed.