UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, O'Brien and Raphael
Argued at Lexington, Virginia

ANTHONY WAYNE EDMONDS

MEMORANDUM OPINION* BY
v.        Record No. 0657-21-3        JUDGE ROBERT J. HUMPHREYS
                                      APRIL 19, 2022
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF WYTHE COUNTY
Josiah T. Showalter, Jr., Judge

(Paul R. Cassell; Cassell & Crewe, PC, on briefs), for appellant.
Appellant submitting on briefs.

Matthew P. Dullaghan, Senior Assistant Attorney General (Mark R.
Herring, [1] Attorney General, on brief), for appellee.


Following a bench trial in the Wythe County Circuit Court, Anthony Wayne Edmonds was

convicted of one count of possession of child pornography, in violation of Code § 18.2-374.1:1(A);

and twenty-nine counts of possession of child pornography, second or subsequent offense, in

violation of Code § 18.2-374.1:1(B).  Edmonds asserts that the circuit court erred in relying on a

videotaped interview that had not been admitted into evidence when it denied Edmonds' motion to

strike.  Edmonds also asserts the circuit court erred in adjudicating him guilty for possessing child

pornography because the images for which he was charged had either been deleted from the

computer or were temporary internet files.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

BACKGROUND

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (*en banc*) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). This principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (*en banc*) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

The Southern Virginia Internet Crimes Against Children Task Force ("the task force") received a tip that a suspected child pornography image had been uploaded using the Skype messaging platform. The uploaded image was traced to an internet protocol (IP) address owned by Edmonds and his wife. The task force provided this information to Wythe County Sheriff's Lieutenant Joe Kincer to further investigate.

Upon receiving the tip, Lieutenant Kincer went to Edmonds' home and spoke with him. During their discussion, Edmonds told Lieutenant Kincer that he had downloaded Skype "but he could not get it to set up—was it in [sic] for maybe five minutes, but then he told himself he had to stop, and he took Skype off." Edmonds then identified all the internet accessible devices in his home including a desktop computer, a Dell 2400. Edmonds admitted that he struggled with pornography throughout his life and that he always used a computer to view it. Edmonds noted that he had previously owned an older laptop but had taken it to the dump in an effort to stop viewing pornography. During his discussion with Lieutenant Kincer, Edmonds identified five individuals who lived in his home and had internet accessible devices. Edmonds described each household member to Lieutenant Kincer and explained why none of them could be responsible for the image

- 2 -

reported to the task force. Edmonds admitted that in the time frame the image was uploaded onto Skype, it had to have been him who uploaded it.

Edmonds showed Lieutenant Kincer the Dell desktop computer, which was kept in a locked basement room along with Edmonds' firearms and alcohol. Edmonds explained that he kept the room locked to prevent the minors in the house from entering. Upon Lieutenant Kincer's request, Edmonds voluntarily relinquished the Dell computer for analysis.

On April 20, 2017, Lieutenant Kincer arrested Edmonds and conducted a second interview, which he videorecorded. Edmonds was charged with thirty counts of possession of child pornography, and a bench trial followed. All of the images for which Edmonds was charged were found on the Dell computer. At the trial, the Commonwealth played the video recording of Edmonds' April 20, 2017 interview without objection. The Commonwealth, however, never moved to enter the recorded interview into evidence and, as a result, it is not part of the record before us on appeal.

At trial, Edmonds stipulated that the thirty images for which he was charged met the legal definition of child pornography. Twenty-one of the images were found in the computer's temporary internet file cache under Edmonds' username and the remaining nine images were found in a JASC Software Paint Shop Photo Album cache ("JASC").

Investigator Ashley Bensinger, a forensic computer examiner with the Bedford County Sheriff's Office, testified about her forensic analysis of Edmonds' computer. The Commonwealth introduced thirty images into evidence that Investigator Bensinger had found in the course of her analysis.[2] She testified that she also found recently used files named "11yonotavirgin3.bpm,"

_____

[2] At trial, Edmonds took conflicting positions regarding how many of the thirty images found by Investigator Bensinger were marked as deleted. When cross-examining Investigator Bensinger, he asserted that twelve of the charged images were deleted. In his motion to strike the evidence, Edmonds argued that seventeen of the charged images were deleted. On appeal, his

"12YO.whitepanties.jpg," "7YO.jpg," and "14.jpg," which titles were suggestive of child pornography. Additionally, Investigator Bensinger noted that there were two user-created accounts on the Dell computer titled "Andy Edmonds" and "Rose Edmonds," respectively. The last recorded login under Rose Edmonds' account was in 2009, and the last recorded login for Andy Edmonds' account was in 2015. Investigator Bensinger testified that all the images were found under Andy Edmonds' user profile. She also discussed the child pornography images that she found in the JASC cache and explained that "when [a] photo is viewed—the cache helps that photo . . . come up quicker" when a user returns to it again. Her forensic analysis indicated that JASC had recently been accessed.

Investigator Bensinger also found evidence of Google searches that included the search term "young." She analyzed cookies found in the computer and testified that cookies "are packets of data that are stored when you visit a website." Cookies retain information "about the . . . user and . . . the type of website that was . . . visited." Investigator Bensinger's analysis revealed that the computer had been used to visit sites indicative of child pornography, such as "preteenportal," "Lolita," and "littlegirlpreteenangels.net."

The circuit court questioned Investigator Bensinger about whether the images found in Edmonds' temporary internet file cache could have been caused by "pop-ups" while browsing the internet. Pop-up images would not have necessarily required an affirmative action by Edmonds. Investigator Bensinger explained that she "did not believe [pop-ups] to be the main source" of the illegal images because she "didn't see any evidence of any type of pop[-]ups" and noted that the "majority of the artifacts in this case pointed toward . . . user[-]initiated items."

---

assignment of error asserts that five of the thirty image exhibits state that they were deleted. Our review of the record and admitted exhibits also reveals that five of the thirty images were marked as "deleted."

Upon the conclusion of the Commonwealth's evidence, Edmonds made a motion to strike on the grounds that the evidence was insufficient as a matter of law to sustain the convictions. He argued that because some of the deleted images found on his computer could not be recovered without special forensic software—and it was uncontested that Edmonds' computer did not contain such special forensic software—the evidence was insufficient to prove that he had possessed the deleted images. Edmonds also argued that the evidence was insufficient to prove that he had accessed the images in the temporary internet files, and, as a result, the Commonwealth had failed to prove he possessed those images, as well. The circuit court denied the motion.

Edmonds testified in his own defense and stated that going to pornographic websites was a "release" for him and that he and his wife had not been getting along so he visited pornographic websites as "a way of escape." He denied knowingly visiting websites for child pornography or downloading any images of child pornography. Edmonds admitted that he went to chatrooms, but he claimed that he always verified that the chatrooms were for those eighteen and older. When he visited those sites, numerous pop-ups often appeared. He stated that he tried to exit the sites quickly but often had to shut the computer down to stop them.

After the defense rested its case, Edmonds renewed his motion to strike and again argued that he could not have possessed deleted images because those images were inaccessible to the user and Edmonds' computer did not contain the appropriate software to view them. The circuit court overruled the motion.

At the conclusion of the evidence, the circuit court made numerous factual findings on the record. It found that Edmonds admitted having a lifetime struggle against viewing pornography in both the videotaped interview and in his testimony at trial. It also found Edmonds initiated the website search "young" and searched within recent files for "11yonotavirgin3.bpm," "13yo.friend.bp," "!!!!14openpssy.jpe," "12YO.whitepanties.jpg," "7YO.jpg," and "14.jpg." The

court likewise found that Edmonds visited websites associated with child pornography and that Edmonds alone accessed and had dominion and control over the thirty images found on the Dell 2400 computer. The circuit court found that Edmonds' wife did not have dominion and control over the illegal images on the computer and also noted that the three minors in the home could not have accessed the computer because the room was locked. The circuit court found that "pop[-]ups were not a factor in [Investigator Bensinger's] analysis in determining whether or not those thirty child pornography pictures were accessible" by Edmonds. The circuit court stated, "[D]uring your statement, your video statement, that this court saw, I think you said it best. You were like a . . . Hyde and Jekyll. Those are your words. That 'when I was alone, I was a Jekyll.'"[3]

The circuit court subsequently convicted Edmonds for one count possession of child pornography and twenty-nine counts of possession of child pornography, second or subsequent offense. This appeal followed.

ANALYSIS

I. EDMONDS' FIRST ASSIGNMENT OF ERROR IS DEFAULTED

Edmonds first argues that the videotaped interview played for the circuit court was "never properly identified, authenticated, and/or admitted into evidence" and, therefore, the circuit court "erred in relying on information" from the interview when it convicted Edmonds.[4] He admits that

---

[3] Those who have read Robert Louis Stevenson's *The Strange Case of Dr. Jekyll and Mr. Hyde* know that the character's alter-ego was actually Hyde, not Jekyll.

[4] We note that there are discrepancies between the assignments of error found in Edmonds' petition for appeal and the granted assignments of error listed in the brief. Rule 5A:12(c)(1)(i) mandates, "[o]nly assignments of error assigned in the petition for appeal will be noticed by this Court." As a result, we will address the assignments of error listed in Edmonds' petition.

he did not present this issue to the circuit court, yet "asserts that Rule 5A:18 is inapplicable here"[5] because "there was no opportunity to object."

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

Edmonds' assignment of error states, "If exception should have been noted, defendant asserts that the 'ends of justice' exception authorizes review." First, we note that the "'exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred." *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (*en banc*) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 220 (1997)). "In deciding whether the exception should apply, an appellate court must ask two questions: '(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice.'" *Fletcher v. Commonwealth*, 72 Va. App. 493, 510 (2020) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009). "In examining a case for miscarriage of justice, we do not simply review the sufficiency of the evidence under the usual standard, but instead determine whether the record contains affirmative evidence of innocence or lack of a criminal offense." *Holt*, 66 Va. App. at 210 (quoting *Flanagan v. Commonwealth*, 58 Va. App. 681, 695 (2011)).

---

[5] Given Edmonds' invocation of the "ends of justice" exception to Rule 5A:18 in his assignment of error, we assume he actually means that the Rule is "applicable" rather than "inapplicable."

Second, we examine whether there was error as contended by Edmonds. He correctly notes that the Commonwealth failed to admit the videotaped interview with Lieutenant Kincer into evidence at trial and the recording is not a part of the record on appeal[6]; however, Edmonds did not object in the circuit court when the Commonwealth sought to "play [the interview] for the court" during Lieutenant Kincer's testimony. Further, he never raised an objection to the circuit court's stated reliance on the videotaped interview when it denied his motion to strike. Neither did he raise an objection when the circuit court referenced the videotaped interview as it adjudicated Edmonds guilty. As things are, the circuit court was never advised of the claim Edmonds now makes on appeal and had no opportunity to address or resolve that issue and we decline to address it on appeal. Our "[c]ase law makes clear that 'formal introduction [of documentary evidence] is waived where the court and parties treat an instrument as in evidence . . . or where it is read without objection.'" *Mueller v. Commonwealth*, 15 Va. App. 649, 652 (1993) (alterations in original) (quoting *Martin v. Winston*, 181 Va. 94, 105 (1943)). Here, the recording of the interview was played for the factfinder without objection, and it was treated by the circuit court and the parties as if it had been admitted into evidence, even though it had not been so admitted. Edmonds' counsel referenced the videotaped interview as it had been played both during Lieutenant Kincer's testimony and during Edmonds' own testimony. The circuit court also emphasized that Edmonds had made some of the same admissions "from the witness stand" as he did in the videotaped interview. Furthermore, the circuit court found that the videotaped "interview was shown in [c]ourt today *without objection*." (Emphasis added.) Because the videotaped interview was treated at trial as if it had been moved into evidence without objection, and on appeal Edmonds does not raise the issue of whether the evidence, *sans* interview, was

---

[6] Edmonds' assignment of error regarding the Commonwealth's failure to move the interview into evidence does not raise the issue of whether the evidence was sufficient to convict him.

sufficient for conviction, we hold that the circuit court did not err. Because the circuit court did not err, the "ends of justice exception" is inapplicable here.

Moreover, by asserting that "there was no opportunity to object" to the circuit court's reliance, in part, on the recorded interview, we assume Edmonds is unartfully suggesting that the "good cause" exception to Rule 5A:18 may be applicable. "The Court may only invoke the 'good cause' exception where an appellant did not have the opportunity to object to a ruling in the trial court; however, when an appellant 'had the opportunity to object but elected not to do so,' the exception does not apply." *Perry v. Commonwealth*, 58 Va. App. 655, 667 (2011) (quoting *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)).

Here, the record is clear that Edmonds had the opportunity to object to the circuit court's reliance on information from the interview in finding Edmonds guilty. When pronouncing Edmonds guilty, the circuit court specifically stated for the record "that in an interview given with [Lieutenant] Kincer . . . [Edmonds] indicated that he, throughout his life, has had a problem dealing with pornography." Edmonds provides no explanation for why he could not have objected to the circuit court's statement regarding the information from the videotaped interview. Edmonds also failed to raise the issue when he made a motion to strike the evidence. Therefore, because Edmonds had the opportunity to argue his claims but elected not to raise them, we decline to apply the good cause exception to Rule 5A:18. *See id.*

Accordingly, we decline to apply either exception to Rule 5A:18 to his argument, and consider the merits of the issue waived by his failure to object below.

## II. STANDARD OF REVIEW FOR THE REMAINING ASSIGNMENTS OF ERROR

Edmonds' last two assignments of error contend that the circuit court erred in finding him guilty of possessing child pornography because the evidence was insufficient to convict him. He argues that the images he was convicted of possessing had either been deleted or were temporary

internet files that "could have been created without [Edmonds'] knowledge and without any affirmative action on [Edmonds'] part." Edmonds contends there was no evidence that his computer contained the specialized software necessary to view the deleted images and that there was no evidence that he accessed the temporary internet files after their creation.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Pijor*, 294 Va. at 512). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

"The sole responsibility to determine the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017). "That responsibility lies with the fact finder because '[t]his [C]ourt[,] sitting as an appellate court, and knowing nothing of the evidence or of the witness, except as it appears on the paper, . . . [is] incompetent to decide on the credibility of the testimony.'" *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (alteration in original) (quoting *Brown v. Commonwealth*, 29 Va. (2 Leigh) 832, 841 (1830)). Further, it is within the province of

the factfinder to draw inferences from the proven evidence, and its inferences are binding so long as they are reasonable and justified. *See Hudson*, 265 Va. at 514.

"Circumstantial evidence, if sufficiently convincing, is as competent and entitled to the same weight as direct testimony." *McCain v. Commonwealth*, 261 Va. 483, 493 (2001). This Court does not view circumstantial evidence in isolation. *See Kelly*, 41 Va. App. at 259. Rather, the "combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." *Dowden v. Commonwealth*, 260 Va. 459, 470 (2000) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)).

When assessing whether the circumstantial evidence excludes a reasonable hypothesis of innocence, the Commonwealth "need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (quoting *Hamilton v. Commonwealth*, 16 Va. App. 751, 755 (1993)). "The reasonable-hypothesis principle . . . is 'simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'" *Commonwealth* v. *Moseley*, 293 Va. 455, 464 (2017) (quoting *Hudson*, 265 Va. at 513). "[T]he factfinder determines which reasonable inferences should be drawn from the evidence, [sic] and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." *Id.* "Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." *Holloway v. Commonwealth*, 57 Va. App. 658, 665 (2011) (*en banc*) (quoting *Archer v. Commonwealth*, 26 Va. App. 1, 12-13 (1997)).

III. SUFFICIENCY OF EVIDENCE FOR POSSESSION

The Code of Virginia mandates that knowing possession of child pornography is a Class 6 felony offense and any second or subsequent offense is a Class 5 felony. *See* Code § 18.2-374.1:1(A) and (B). "'[C]hild pornography' means sexually explicit visual material which

- 11 -

utilizes or has as a subject an identifiable minor." Code § 18.2-374.1(A). "[T]he term 'sexually explicit visual material' means a picture, photograph, drawing, sculpture, motion picture film, digital image, including such material stored in a computer's temporary Internet cache when three or more images or streaming videos are present . . . ." *Id.* Code § 18.2-374.1(A) thus explicitly criminalizes storing pornographic images in one's computer's temporary Internet file cache.[7]

The Commonwealth was required to prove that Edmonds knowingly possessed the child pornography on the Dell 2400 computer found in his basement and that the contraband was subject to his dominion and control; accordingly, we examine this case under the principles of constructive possession of contraband. *See Kromer v. Commonwealth*, 45 Va. App. 812, 818 (2005). "We do not need to determine whether appellant was the person" who saved the child pornography files to the Dell 2400 computer but, "rather, we determine whether appellant knew the images existed and, if so, did he exercise dominion and control over them" after they were placed on the computer. *Id.*

To convict a defendant for constructive possession, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the [contraband] and that it was subject to his dominion and control." *Terlecki v. Commonwealth*, 65 Va. App. 13, 24 (2015) (alteration in original) (quoting *Drew v. Commonwealth*, 230 Va. 471, 473 (1986)). "Ownership or occupancy of the premises on which the contraband was found is a circumstance probative of possession." *Id.* (quoting *Kromer*, 45 Va. App. at 819).

---

[7] The statute only criminalizes images stored in a computer's temporary Internet cache if three or more prohibited images or streaming videos are present. As noted, twenty-one prohibited images were found in Edmonds' temporary Internet cache.

Edmonds relies heavily upon *Kobman v. Commonwealth*, 65 Va. App. 304, 308 (2015), to support his argument that the circuit court erred in convicting him of possessing five images that were marked as deleted. In *Kobman*, the Commonwealth charged the appellant with possessing deleted images of child pornography on or about May 19, 2013. *See id.* at 307. This Court held that the evidence was insufficient to prove Kobman had constructively possessed images found in the unallocated space of computers seized from his home because

> [N]o evidence showed other indicia of knowledge, dominion, or control of the forty-five photographs found in the unallocated space on the specific date of the indictments. While the evidence may suggest appellant at one time possessed the photographs in the unallocated space, there was no evidence that he had dominion or control of them on or about May 19, 2013, as the indictments charged.

*Id.* at 308.

The present case is distinguishable from *Kobman* because the record contains a significant amount of evidence indicating that Edmonds had at one time possessed the deleted images found on his computer "on or about" the date noted in the indictment. The issue of constructive possession of contraband is "largely a factual one." *Raspberry v. Commonwealth*, 71 Va. App. 19, 30 (2019) (quoting *Ritter v. Commonwealth*, 210 Va. 732, 743 (1970)). As noted above, our standard of review grants "full play" to the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Kelly*, 41 Va. App. at 257-58. Further, Code § 8.01-680 mandates that the judgment of the circuit court, when sitting as factfinder, shall not be set aside unless it appears from the evidence that the judgment was plainly wrong or without evidence to support it.

Viewing the evidence in the light most favorable to the Commonwealth, we hold that a rational trier of fact could have found there was sufficient indicia that Edmonds had knowledge of and dominion and control over all the images on the computer. Edmonds willingly showed

- 13 -

Lieutenant Kincer the Dell 2400 computer and voluntarily consented to forensic analysis of it. Edmonds admitted to Lieutenant Kincer and testified on the witness stand that he had had a problem with pornography throughout his life. At trial, Edmonds testified that upon being arrested, he told the police that he took full responsibility for what was on the computer. The evidence also shows that the computer on which all the relevant pornographic images were found had been kept in a locked room that the minors in the home could not access. At the bench trial, Investigator Bensinger testified that her forensic analysis revealed that there were only two computer users—Edmonds and his wife. Edmonds' wife had last logged on in 2009. Edmonds last logged on in 2015. In the most recently used or open files catalog there were file folders named "11YONOTAVIRGIN3.BPM," "13 year (YO).friend.bpm," and "!!!!14openpussy.jpe." Cookies found on Edmonds' computer illustrated that he visited websites indicative of child pornography. Additionally, several child pornographic images were found in the cache of a JASC Software program, a photo application that allows a user to view images. Forensic analysis indicated that the JASC program had recently been accessed. The Commonwealth's expert stated that caches and temporary internet files are accessible to the user without need for any specialized software.

Consequently, we do not disturb the circuit court's finding that Edmonds constructively possessed the deleted images. Additionally, we find no evidence in the record to support Edmonds' claim that pop-up advertisements on adult pornographic websites were the source of the child pornographic images found in the JASC Software program cache, and we do not disturb the circuit court's finding of fact that Edmonds' hypothesis of innocence in this regard was unreasonable.

## IV.  DATES OF THE OFFENSES

Finally, we address Edmonds' contention that the "Commonwealth cites no evidence in the relevant timeframe that the indicia of dominion and control were present as to images actually charged in the indictments."

The Commonwealth was not required to prove the exact date Edmonds was in possession of each image to convict him of possession of child pornography.  "No indictment . . . shall be quashed or deemed invalid . . . [f]or omitting to state, or stating imperfectly, the time at which the offense was committed when time is not the essence of the offense."  Code § 19.2-226(6).  "When time is not an element of the crime charged, the . . . verdict will stand" so long as the evidence proves that "a crime occurred and that the defendant committed the crime, even though the evidence is such that there may be a reasonable doubt as to the day on which the offense occurred."  *Marlowe v. Commonwealth*, 2 Va. App. 619, 623-24 (1986).  Further, "[t]ime is not a material element of a criminal offense unless made so by the statute creating the offense."  *Farhoumand v. Commonwealth*, 288 Va. 338, 351 (2014) (alteration in original) (quoting *United States v. Stuckey*, 220 F.3d 976, 982 (8th Cir. 2000)).  Thus, where there is no such statutory provision, "[i]n a felony case the Commonwealth may prove the commission of a crime charged on a date different from that alleged in the indictment."  *Id.* (alteration in original) (quoting *Harris v. Commonwealth*, 185 Va. 26, 34 (1946)).

Under the plain language of Code § 18.2-374.1:1, time is not a material element of the crime of possession of child pornography.  Consequently, Edmonds' convictions will stand so long as the evidence was sufficient to prove he possessed child pornography as charged in the indictments.  As discussed above, the record reveals the evidence was so sufficient.

CONCLUSION

Edmonds' failure to timely object to the videotaped interview at trial waived his right to challenge the circuit court's consideration of it on appeal. The direct and circumstantial evidence in the record supports the factfinder's conclusions that Edmonds constructively possessed the illegal images found on the computer. Accordingly, we affirm the judgment of the circuit court on all three assignments of error.

*Affirmed.*