**Carrie VOSS, as parent of Justin J. Drapeau, a minor, and Jesse * L. Drapeau, a minor, Appellant,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Appellee.**

No. 93–3489.

United States Court of Appeals, Eighth Circuit.

Submitted April 11, 1994.

Decided Aug. 16, 1994.

Rehearing Denied Sept. 19, 1994.

---

* In the original caption of this case Jesse L. Drapeau's first name was spelled "Jessie." According to the copy of his birth certificate in the record, the correct spelling of his first name is "Jesse." On the court's own motion, "Jesse" has been substituted for "Jessie."

Mary Skaff, Omaha, NE, argued, for appellant.

Daniel Morris, Asst. U.S. Atty., Omaha, NE, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, HENLEY, Senior Circuit Judge, and BEAM, Circuit Judge.

HENLEY, Senior Circuit Judge.

Carrie Voss, as the parent of Justin J. Drapeau and Jesse L. Drapeau, appeals from a judgment of the district court [1] upholding a decision of the Secretary of Health and Human Services (Secretary) denying their claims for surviving children's benefits under 42 U.S.C. § 402(d) based on the earnings record of her deceased husband, Clarence Voss. We affirm.

In July 1978, Carrie married Clarence. They lived together "off and on" during their marriage. Justin was born in South Dakota in 1980, and Jesse was born in South Dakota in 1982. Alfonso Drapeau signed the birth certificates, stating he was the father. On several occasions, Clarence, who lived in Wisconsin, attempted to adopt the boys; the attempts were unsuccessful. In connection with the adoption proceedings, Drapeau consented to the termination of his parental rights, attesting that he was a parent of Justin and Jesse.

Two months before his death in July 1989, Clarence moved to Omaha, Nebraska and retained an attorney in yet another attempt to adopt the boys. However, as of the date of his death, no action had been filed. In his will, Clarence left everything to Carrie, noting she should care for their two-year old daughter; Clarence did not mention the boys.

In January 1990, Carrie, on behalf of the boys, filed an application for children's benefits. After the claim was denied initially and on reconsideration, in October 1991 Carrie appeared before an administrative law judge (ALJ). Carrie admitted that Drapeau was the boys' natural father, but she submitted a September 1991 Wisconsin probate court judgment stating that the boys were Clarence's heirs. After the hearing, she submitted a November 1991 Nebraska probate court judgment stating the same.

The ALJ denied the application, finding that the boys were not Clarence's children

1. The Honorable William G. Cambridge, United States District Judge for the District of Nebraska.

within the meaning of the Social Security Act. An applicant is entitled to surviving children's benefits if he or she was the "natural child, legally adopted child, stepchild, ... or equitably adopted child" of a deceased wage earner. 20 C.F.R. § 404.354(a). "In determining whether an applicant is the child ... of a[n] ... insured individual ..., the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual ... was domiciled at the time of his death." 42 U.S.C. § 416(h)(2)(A). "Applicants who according to such law would have the same status relative to taking intestate personal property as a child ... shall be deemed such." *Id.*

The parties agreed that Nebraska law applied. The ALJ found that the boys were not Clarence's natural or adopted children or stepchildren and could not be deemed children because they would have been ineligible to inherit Clarence's personal property under the state intestacy statute. *See* Neb.Rev. Stat. §§ 30–2301, –2302, –2309. Although state law created a rebuttable presumption that children born during a marriage were the product of the marriage, the ALJ found that the presumption had been rebutted because Carrie had admitted that Drapeau was the boys' natural father and that her admission was consistent with the documentary evidence. In reaching this conclusion, the ALJ considered the state probate court judgments, but held that he was not bound by them because they conflicted with the "overwhelming weight of the evidence" and were ex parte in nature. The ALJ also held that while Nebraska recognized the doctrine of equitable adoption, it was inapplicable because Carrie had not proved the existence of a clear and complete agreement to adopt and that Clarence had the mental capacity to enter into a contract. In particular, the ALJ noted that shortly before Clarence moved to Nebraska his sister had filed a guardianship

proceeding against him, and in connection with the proceeding a social worker had concluded that Clarence, who was seventy-five years old at the time, "was incapable of handling his affairs and [wa]s in need of a guardian."

The district court upheld the denial, holding that substantial evidence supported the decision. Carrie then filed this appeal.

■ Carrie first argues that the ALJ erred in concluding that he was not bound by the probate judgments and that the error violated the Full Faith and Credit Clause of the Federal Constitution. We disagree. "The Secretary is under no constitutional compulsion to give full faith and credit to the [ex parte] [j]udgment[s], nor is [s]he bound ... under principles of res judicata since [s]he was not a party to the probate court proceeding[s]." *Warren v. Secretary of Health & Human Serv.,* 868 F.2d 1444, 1446–47 (5th Cir.1989) (per curiam). *See also Baker v. Sullivan,* 880 F.2d 319, 322 (11th Cir. 1989) ("As a legal matter, the Appeals Council could determine that the state court judgment was not binding on the Secretary on the issue of paternity of the children ..., particularly when the Secretary is not a party to the state court action, and no opposing interests were presented in the case."); *Cain v. Secretary of Health, Educ. & Welfare,* 377 F.2d 55, 58 (4th Cir.1967) ("Indeed, it is well-settled that the Secretary is not bound by ex parte decisions made in the state courts."). Rather, the probate judgments are "only one part of a broader inquiry both into the facts and the applicable law." *Warren,* 868 F.2d at 1447. Here, the ALJ properly "considered the [j]udgment[s], but concluded on the basis of the full record," *id.,* that the boys were not Clarence's heirs under state law.[2]

■ Carrie next argues that the ALJ misapplied Nebraska law. She relies on *Ford v. Ford,* 191 Neb. 548, 216 N.W.2d 176, 177 (1974), wherein the court held that although

2. We believe this case illustrates why the Secretary should not be bound by an ex parte state court judgment. At the administrative level, Carrie took a position at odds with the position she takes on appeal. In a memorandum, Carrie's attorney suggested that the ALJ should disregard the Wisconsin judgment stating that the boys were Clarence's heirs because it was entered without Carrie's knowledge and in ignorance of the fact that Clarence had left a will. According to the memorandum, the Wisconsin action was filed by the attorney who represented Clarence in the unsuccessful Wisconsin adoption proceedings in an attempt to collect unpaid legal fees.

the presumption of legitimacy could be rebutted by clear and convincing evidence, "the testimony or declaration of a husband and wife is not competent to bastardize a child born during wedlock." Assuming without deciding that section "416(h)(2)(A) requires the [Secretary] to apply, not only [Nebraska's] substantive law, including presumptions and burden-of-proof rules, but also special evidentiary rules such as one that limits a mother's testimony on the question of her own child's legitimacy[,]" *Becker v. Secretary of Health & Human Serv.*, 895 F.2d 34, 36 (1st Cir.1990), Carrie's reliance on *Ford v. Ford* is misplaced. In *Roebuck v. Fraedrich*, 201 Neb. 413, 267 N.W.2d 759, 760 (1978), the Nebraska Supreme Court held that "[t]he rule stated in *Ford v. Ford* ... is applicable only to actions between husband and wife."[3] Moreover, in addition to Carrie's testimony and Clarence's declarations in the adoption proceedings, the ALJ also relied on Drapeau's statements in the birth certificates and his affidavits in support of his Wisconsin petitions to terminate his parental rights.

■ Carrie also asserts that the ALJ erred in concluding that the equitable adoption doctrine was inapplicable. Assuming Nebraska recognizes the doctrine, we find no error in the ALJ's conclusion. However, we believe that the ALJ erred in holding that Nebraska recognized the doctrine. The ALJ relied on "a line of cases decided early in this century." *See Cain v. Dowling*, 105 Neb. 741, 181 N.W. 930 (1921); *Tuttle v. Winchell*,

104 Neb. 750, 178 N.W. 755 (1920). It appears that these cases are no longer good law. In *In re Ritchie*, 155 Neb. 824, 53 N.W.2d 753, 755 (1952), a petitioner asked the Nebraska Supreme Court to exercise its equity powers and "extend the rights of adoption beyond the plain terms of the statutes and likewise bypass the requirement that a petition for adoption be filed in county court and the procedures fixed by statute." *Id.* 53 N.W.2d at 755–56. The court refused in no uncertain terms. The court stated: "Adoption proceedings do not depend upon equitable principles. Where the essential statutory requirements have not been met, equity cannot decree an adoption." *Id.* 53 N.W.2d at 756.

■ Carrie also attempts to raise an equal protection challenge. In her two-page "discussion" she reiterates that the ALJ misapplied Nebraska law; concedes that in *Mathews v. Lucas*, 427 U.S. 495, 506, 96 S.Ct. 2755, 2762, 49 L.Ed.2d 651 (1976), the Supreme Court held that illegitimacy was not a suspect class; suggests the ALJ discriminated against the boys because they "were born on an Indian reservation"; and concludes by stating that this case deals "with an agency application contrary to the statute." We are not certain what Carrie is arguing. To the extent that she argues the Secretary misapplied the statute or applied it in a discriminatory manner, we reject those arguments. To the extent that she attempts to raise a constitutional challenge to the stat-

**3.** The rule stated in *Ford v. Ford* is commonly known as Lord Mansfield's Rule. It has its origin in *Goodright v. Moss*, 98 Eng.Rep. 1257 (1777). In that case, Lord Mansfield held that "the declarations of a father or mother cannot be admitted to bastardize the issue born after the marriage." *Id.* at 1258. "The primary policy rationale underlying the [rule's] severe restrictions on rebuttal of the presumption [of legitimacy] appears to have been an aversion to declaring children illegitimate ... [and] the interest in promoting the peace and tranquility of ... families." *Michael H. v. Gerald D.*, 491 U.S. 110, 125, 109 S.Ct. 2333, 2343, 105 L.Ed.2d 91 (1989) (plurality opinion; internal quotations omitted).

Throughout her brief Carrie suggests that the Secretary's decision runs afoul of Nebraska's public policy because it "bastardizes" the boys. Carrie may "overstate the modern importance of preventing the 'bastardization' of children." *Nebraska ex rel. J.R. v. Mendoza*, 240 Neb. 149, 481

N.W.2d 165, 172 (1992). In *Mendoza*, the Nebraska Supreme Court reviewed the modern trend in the law and concluded that because "the legal status of children born out-of-wedlock is much more favorable today than in the past[,] ... the necessity of indulging in legal fictions in order to steadfastly protect their legal status is somewhat lessened." *Id. See also, e.g., In re J.W.T.*, 872 S.W.2d 189, 197 (Tex.1994); *C.C. v. A.B.*, 406 Mass. 679, 550 N.E.2d 365, 371 (1990).

The writer of this opinion wishes to express the view that there are no "illegitimate" babies, although perhaps there may be "illegitimate" parents. Moreover, the opprobrium of using terms such as "bastard" or "illegitimate" appears to be lessened by using the more neutral term "out-of-wedlock." In fact, West Publishing Company retitled the digest topic "Bastards" first to "Illegitimate Children" and then to "Children Out-of-Wedlock." *See, e.g.,* 12 F.P.D.4th 659.

ute, we decline to address it. It appears Carrie failed to raise such a challenge properly in the district court. In any event, she fails to do so on appeal. Her "constitutional arguments ... are offered undigested." *Max M. v. New Trier High School Dist.*, 859 F.2d 1297, 1300 (7th Cir.1988). "Assessing the constitutionality of a statute is the most delicate task of a federal court. A litigant cannot require constitutional adjudication by incanting magic spells or pointing a finger at a particular clause." *Id.*

Accordingly, the judgment of the district court is affirmed.