# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1060

_____

| | | |
|---|---|---|
| Jack Spencer Evans, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Russell Rogerson, Warden, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  June 15, 2000

Filed:  August 22, 2000

_____

Before BOWMAN, FLOYD R. GIBSON,[1] and MORRIS SHEPPARD ARNOLD,
Circuit Judges.

_____

BOWMAN, Circuit Judge.

The State of Iowa appeals the District Court's grant of Jack Evans's petition for
habeas corpus relief under the Antiterrorism and Effective Death Penalty Act of 1996,
Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  We conclude that the District Court
erred in holding that the Iowa Supreme Court made an unreasonable determination of
the facts in rejecting Evans's claim that the police violated his Fifth Amendment

_____

[1]Complications from an automobile accident have prevented Judge Gibson from
reviewing this opinion prior to its being filed.

privilege against self-incrimination. See 28 U.S.C. § 2254(d)(2) (Supp. IV 1998). We reverse and remand.

## I.

Evans was convicted of first-degree murder in Iowa state court and was sentenced to life in prison. After exhausting his state court remedies, Evans brought a habeas corpus petition contending that his Fifth Amendment right against self-incrimination was violated during police questioning of him in his home following the murder.[2] The details of Evans's in-home interview are essentially undisputed and fully vetted in the record. See Evans v. Rogerson, 77 F. Supp. 2d 1014 (S.D. Iowa 1999); Iowa v. Evans, 495 N.W.2d 760 (Iowa 1993) (en banc); Iowa v. Evans, No. 2-016/91-288 (Iowa Ct. App. Mar. 24, 1992); Iowa v. Evans, No. CR401-1090 (Iowa D. Ct. Jan. 4, 1991).

The undisputed facts are as follows. Following the murder, ballistics tests revealed that a gun Evans recently purchased, and which was stored at his home, was the murder weapon. Subsequently, the police went to Evans's home to interview him and to execute a search warrant. Before beginning the interview, police read Evans his Miranda[3] rights and Evans acknowledged that he understood them, saying "I think so." Evans, No. CR401-1090, at 2. The police further explained Miranda rights to Evans and asked him to sign a waiver. Evans asked if signing the waiver would "get [him] in trouble." Id. The police told him it would not, and Evans signed the waiver.[4]

---

[2]Evans raised four other grounds for habeas relief which the District Court did not reach.

[3]Miranda v. Arizona, 384 U.S. 436 (1966).

[4]Evans asserts that he is "mentally retarded with borderline intellectual functioning." Brief of Appellee at 4. The Iowa District Court, however, clearly found that "[t]here is nothing in the record, nor in the Court's observation of [Evans] and its

The police then questioned Evans in his living room. During the interview, Evans was watching television and, as the interview progressed, a police officer moved his chair between the television and where Evans was sitting. At some point thereafter, Evans said that he did not want to answer any additional questions and the police stopped the questioning. Subsequently, the police learned that there was a defect in the search warrant and one police officer left Evans's home to correct it. Another police officer stayed behind with Evans to prevent the destruction of evidence in the meantime. He also kept a close eye on Evans out of concern for his safety because there were loaded firearms in Evans's home. Evans and the police officer watched television together in silence for about half an hour. Evans broke the silence by asking the police officer if Evans could ask him some questions. The police officer reminded Evans that Evans had invoked his right to remain silent and had been advised of his rights. The conversation progressed as Evans asked the police officer questions about his job and personal life. Subsequently, the conversation flowed, or the police officer directed it, back to the murder investigation wherein Evans made incriminating statements. During this time, Evans moved about his residence: Evans asked to make a telephone call and was permitted to do so, but he decided not to do so; Evans made lunch for himself and offered to do the same for the police officer; Evans went to the mailbox and was accompanied by the officer; Evans went to the bathroom and was instructed to keep the door open.

## II.

Surveying the events surrounding Evans's questioning, the District Court held that Evans was "in custody" when police questioned him in his home; that the

---

listening to his testimony, to suggest that [Evans] is anything other than mentally fit and fully capable of understanding these as well as all other proceedings." Evans, No. CR401-1090, at 4. We see no basis on which to disturb this conclusion.

questioning, therefore, was governed by Miranda; that Evans did not waive his Miranda rights after invoking his right to remain silent; and that police did not "scrupulously honor" Evans's right to remain silent. Evans, 77 F. Supp. 2d at 1022-1033, 1034. The District Court held that the Iowa state courts' decisions to the contrary were erroneously based upon an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(2). Concluding that this constitutional error was not harmless, the District Court granted Evans's habeas petition. Although the District Court viewed this case as involving an unreasonable determination of facts (§ 2254(d)(2)), because the relevant facts surrounding Evans's interview by police are undisputed, the proper analysis is whether the Iowa courts reasonably applied federal law to those facts (§ 2254(d)(1)).

Under AEDPA, the nature of a habeas court's review is limited: habeas relief "shall not be granted" to a person in custody pursuant to the judgment of a state court, following an adjudication on the merits, unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). Although the District Court recited AEDPA standards (at least with respect to § 2254(d)(2)), it did not apply them, engaging instead in a much less deferential review of the Iowa state courts' adjudication of Evans's claim. The District Court put its own spin on the facts and disregarded the Iowa Supreme Court's reasonable view of them. Because the lower state court decisions involved neither an unreasonable application of federal law nor an unreasonable determination of the facts, we conclude that habeas relief may not be granted on this ground.

The central question here is whether the Iowa Supreme Court erred in making a legal conclusion that Evans's in-home interactions with police did not occur under conditions constituting "custody" of him and therefore did not implicate Evans's rights

-4-

under Miranda, 384 U.S. at 461 (stating rule applies to "[a]n individual swept from familiar surroundings into police custody, surrounded by antagonistic forces, and subjected to [coercive] techniques of persuasion"); see Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (per curium) ("Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'"); Beckwith v. United States, 425 U.S. 341, 345-48 (1976) (finding no custody where in-home interview lacked police overbearing or coercion); see also United States v. Griffin, 922 F.2d 1343, 1347-1356 (8th Cir. 1990) (discussing "non-exhaustive" list of factors "generally focused on" as indicia of coercion, and thus, of custody; noting key to custody determination is "the question of police domination of th[e] setting"; holding, on direct appeal, that defendant interviewed in circumstances somewhat similar to Evans's was "in custody"). Griffin is an application by this Court of settled Supreme Court precedent and suggests many factors for consideration in deciding the "in custody" question. The District Court extensively explored these factors and relied on them in reaching its conclusion that the Iowa Supreme Court's determination was unreasonable. In so doing, the District Court erred as a matter of law. State court attention to the Griffin factors is not required either by Griffin itself or by Supreme Court precedent. The Iowa Supreme Court therefore was not obliged to apply these particular factors in order to be "reasonable" in its determination of whether Evans was "in custody" at the time of his in-home interview. See generally Williams v. Taylor, 120 S. Ct. 1495, 1520, 1522 (2000) (explaining that writ may not be granted under § 2254(d)(1)'s "contrary to" clause if state court identifies controlling Supreme Court precedent and "appl[ies] that framework . . . even assuming the federal court considering the prisoner's habeas application might reach a different result applying the . . . framework itself"; under § 2254(d)(1)'s "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.").

III.

The Supreme Court has said that "[t]he ultimate 'in custody' determination for Miranda purposes" is a mixed question of law and fact requiring "[t]wo discrete inquiries." Thompson v. Koehane, 516 U.S. 99, 112 (1995). First, there is the "distinctly factual" question of determining the circumstances surrounding the interrogation. Id. As stated, here the relevant facts are not in dispute. Then comes the "application of the controlling legal standard to the historical facts" to determine whether "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." Id. Here, because the relevant facts surrounding the interrogation are undisputed, our task as a habeas court is to ask whether the state courts reasonably applied clearly established federal law to those facts.

In applying the"unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 120 S. Ct. at 1523. Here, the Iowa Supreme Court properly reviewed the controlling United States Supreme Court jurisprudence defining "custody" for Miranda purposes. See Evans, 495 N.W.2d at 762-64 (analyzing Edwards v. Arizona, 451 U.S. 477 (1981), Mathiason, Beckwith, and Miranda). The court concluded that applying Miranda to an interview occurring in a suspect's own home—at least in the absence of coercion or of a significant deprivation of the suspect's freedom of movement—would cut Miranda "'completely loose from its own explicitly stated rationale.'" Id. at 763 (quoting Beckwith, 425 U.S. at 345).

The Iowa Supreme Court then went on to apply those clearly established standards to the circumstances of Evans's in-home questioning. In so doing, it concluded that "there is no claim of coercion and none appears in the record." Id. The court observed that Evans continued about his domestic activities while in police

company, "including watching television and preparing a meal. He even offered to fix lunch and iced tea for the officers." Id. The court further concluded that "[i]t could be said, in fact that the interview was under circumstances too relaxing and informal to be effective; at one point, the officers could not divert Evans'[s] attention from television long enough to talk to him until one of them moved his chair to block the television." Id.[5] Applying clearly established federal law, the Iowa Supreme Court concluded that Evans was not in custody, and, accordingly, that Miranda was not implicated and thus could not be violated. Because this conclusion is not unreasonable under existing Supreme Court precedent, habeas relief is not available to Evans on this ground.[6]

IV.

The District Court erred in substituting its view of the evidence for the Iowa Supreme Court's reasonable view of it. We hold that the Iowa state courts' adjudication of Evans's Fifth Amendment claim involved neither an unreasonable application of federal law as determined by the Supreme Court of the United States nor an unreasonable determination of fact and that, accordingly, habeas relief may not be granted on this ground. We reverse the District Court's grant of habeas relief on Evans's Fifth Amendment claim and remand to give the District Court an opportunity to review Evans's remaining four habeas claims, not yet reached by the District Court.

---

[5]We are unpersuaded by the District Court's suggestion that the Iowa Supreme Court failed to consider certain facts simply because it did not recount the course of Evans's interactions with the police in excruciating detail. Those details were fully before the Iowa Supreme Court in the lower court opinions and also were set forth in the dissenting judge's opinion to the Iowa Supreme Court's opinion.

[6]The Iowa Supreme Court also reasonably concluded, in the alternative, that even if Evans could be considered to have been "in custody" and Miranda attached, Evans "freely and voluntarily waived those rights." Evans, 495 N.W.2d at 764.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.