# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3855

_____

|  |  |  |
|---|---|---|
| Michael Owsley, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Michael Bowersox, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  September 13, 2000

Filed:  December 11, 2000

_____

Before HANSEN, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Michael Owsley was convicted of first-degree murder, kidnapping, and two counts of armed criminal action, and was sentenced to death. After unsuccessfully attempting to overturn his convictions in the Missouri state courts, Mr. Owsley petitioned for habeas corpus relief. The district court[1] denied the petition and granted a certificate of appealability on two of Mr. Owsley's claims. We affirm.

_____

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

I.

Mr. Owsley claims that the state trial court violated his constitutional rights by failing to appoint substitute counsel for him. He contends first that an irreconcilable conflict arose between him and his court-appointed counsel, James McMullin, during the course of preparation for his trial. Because of this conflict, Mr. Owsley alleges that there was a complete breakdown in communications and that Mr. McMullin was thus incapable of defending him effectively. Among other things, Mr. Owsley accuses Mr. McMullin of neglecting to meet and consult with him about his defense, failing to conduct all requested investigations, speaking to him in a condescending fashion, and calling him a profane name.

When considering a habeas corpus petition, we examine the record to determine whether the relevant decision of the state courts "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," *see* 28 U.S.C. § 2254(d)(1). In doing so, we are mindful of the recent interpretation of this statute in *Williams v. Taylor*, 120 S. Ct. 1495 (2000), where the Supreme Court emphasized that the phrase "Federal law, as determined by the Supreme Court," refers to "the holdings, as opposed to the dicta, of this Court's decisions," and cautioned that § 2254(d)(1) "restricts the source of clearly established law to this Court's jurisprudence," *id.* at 1523.

To obtain habeas relief, Mr. Owsley must therefore be able to point to a Supreme Court precedent that he thinks the Missouri state courts acted contrary to or unreasonably applied. We find that he has not met this burden in this appeal. Mr. Owsley's claims must be rejected because he cannot provide us with any Supreme Court opinion justifying his position.

Mr. Owsley refers to a few Supreme Court decisions that, at most, deal only remotely with the issues of his case. *See Holloway v. Arkansas*, 435 U.S. 475 (1978), and *Glasser v. United States*, 315 U.S. 60 (1942). These decisions concern conflicts

-2-

of interest that arise when an attorney represents multiple defendants in the same case, *see Holloway*, 435 U.S. at 484-85, 489-90, and *Glasser*, 315 U.S. at 75-76, a context that in no way resembles Mr. Owsley's situation. These cases are therefore inapplicable to Mr. Owsley's complaints about his personality conflicts with his counsel. Because there is no Supreme Court holding that controls the issue of Mr. Owsley's complaint, we cannot disturb the rulings of the Missouri state courts.

Mr. Owsley also contends that his constitutional rights were violated when the state trial court refused to appoint another attorney for him for the purpose of moving for substitute counsel. During the arguments on that motion, Mr. Owsley stated his reasons for asking the trial court to replace Mr. McMullin with another lawyer, and Mr. McMullin disagreed, in response, with several of Mr. Owsley's factual allegations. Mr. Owsley claims that Mr. McMullin's contradiction of his statements effectively left him without the assistance of counsel for the purposes of that motion.

Under the sixth amendment, a criminal defendant is entitled to have the assistance of counsel for all of the critical stages of his trial. *See United States v. Wade*, 388 U.S. 218, 226-27 (1967). To obtain relief based on a violation of the sixth amendment right to counsel, a defendant must prove, among other things, that he suffered actual prejudice. *See Strickland v. Washington*, 466 U.S. 668, 691-92 (1984).

The Missouri Supreme Court found that Mr. Owsley did not suffer any prejudice at the hearing on his motion, *see State v. Owsley*, 959 S.W.2d 789, 793 (Mo. 1977) (*en banc*), *cert. denied*, 525 U.S. 882 (1998), and our examination of the record leaves us unable to say that this conclusion was unreasonable. *See* 28 U.S.C. § 2254(d)(2); *see also Evans v. Rogerson*, 223 F.3d 869, 872-73 (8th Cir. 2000). Indeed, Mr. Owsley does not indicate precisely how the state trial court's rejection of his request worked to his prejudice. We note, too, that Mr. Owsley had a full and fair opportunity to inform the trial court why he wanted someone else other than Mr. McMullin to represent him,

and the record indicates that the trial court understood fully what Mr. Owsley was trying to say. This claim therefore fails.

## II.

Mr. Owsley also asserts that the state trial court unconstitutionally denied him the right to introduce evidence of his intoxication from alcohol and drugs. He maintains that this evidence would have tended to show that he did not have the ability to deliberate required by the offenses for which he was charged. The trial court refused to allow Mr. Owsley to call witnesses to testify about his intoxication because of Mo. Ann. Stat. § 562.076.3, which severely limits the use of such evidence. On appeal, the Missouri Supreme Court declined to review this ruling, holding that Mr. Owsley had failed to preserve the issue for review. *See Owsley*, 959 S.W.2d at 795.

We are obliged to respect the conclusion of the Missouri Supreme Court here. A federal court conducting habeas corpus review must ordinarily refrain from reviewing any issue that a state court has already found to be defaulted on an adequate and independent state-law basis. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 90-91 (1977); and *Pollard v. Armontrout*, 16 F.3d 295, 297 (8th Cir. 1994). In Missouri, it has always been the rule that to preserve a constitutional issue for review, the issue "must be raised at the earliest time consistent with good pleading and orderly procedure," *State v. Flynn*, 519 S.W.2d 10, 12 (Mo. 1975); *see also State v. Tygart*, 673 S.W.2d 83, 87 (Mo. Ct. App. 1984). Furthermore, "the sections of the Constitution claimed to have been violated must be specified; the point must be preserved in the motion for new trial, if any; and it must be adequately covered in the briefs," *Magenheim v. Board of Education*, 340 S.W.2d 619, 621 (Mo. 1960); *see also State v. Sullivan*, 935 S.W.2d 747, 754 (Mo. Ct. App. 1996). It is not enough that the defendant make a vague objection to a ruling that he or she does not like, and "abstract statements of law or mere assertions" do not qualify an argument for appellate review under the Missouri rules, *Magenheim*, 340 S.W.2d at 621.

At trial, Mr. Owsley's attorney responded to the court's ruling on § 562.076.3 only by saying that he did not "agree with that" and he did not "agree with the legislature." Mr. Owsley's attorney did not specify why he thought that the trial court's ruling was incorrect, nor did he provide any reason for his view that the Missouri statute should not have been applied. The Missouri Supreme Court thought that counsel's general protestations were insufficient to preserve Mr. Owsley's appeal on the issue of the intoxication evidence, *see Owsley*, 959 S.W.2d at 795, and this was manifestly correct under the Missouri state courts' rules, which have been consistently followed and do not place an unreasonable burden on the assertion of a federal right. *See Ford v. Georgia*, 498 U.S. 411, 423-24 (1991). This claim is therefore defaulted.

## III.

Although the district court issued a certificate of appealability for only two of Mr. Owsley's habeas corpus claims, he opted nonetheless to raise all of his original claims in his brief on appeal. We decline to discuss the merits of these other claims as they are not properly before us.

For the reasons indicated, we affirm the district court's denial of Mr. Owsley's petition.

HEANEY, Circuit Judge, dissenting.

Michael Owsley, an African American man with a history of mental illness and drug and alcohol abuse, has been sentenced to death. Today the majority upholds Owsley's execution in part because it finds a procedural default, a finding that is contrary to that made by the district court and one that cannot be sustained by a reading of the trial transcript. On the merits of the claim, which the majority fails to reach, it is evident that Owsley was unconstitutionally denied the right to introduce evidence of his intoxication that would have tended to show that he did not have the ability to deliberate, which is required in order to be convicted of first degree murder. See Mo.

Ann. Stat. § 565.020.1.  I also believe that the Missouri state court violated Owsley's constitutional rights by failing to appoint substitute counsel for him after an irreconcilable conflict arose between Owsley and his counsel.  For these reasons, Owsley is entitled to a new trial.  I therefore respectfully dissent.

## I.  EVIDENCE OF INTOXICATION

### A.  Preservation of the Issue

The majority holds that we cannot review the district court's decision on evidence of intoxication because the issue was not preserved at trial.  As the district court held, however, and as is apparent from examining the trial transcript, it is clear that the issue was preserved for review.  Further, the Missouri Supreme Court reviewed on the merits Owsley's closely related claim that jury instruction number 12, which prevented the jury from considering intoxication as it affected criminal responsibility, violated his rights.[2]  See State v. Owsley, 959 S.W.2d 789, 795 (Mo.1997).

The admissibility of the evidence of the intoxication was first argued during a motion in limine.  During the trial, Owsley attempted to introduce the evidence, and when the trial judge again ruled it to be inadmissible, Owsley informed the judge that he did not agree with the ruling.  The judge's response, indicating that the statute "may be unconstitutional" clearly indicates that the judge interpreted Owsley's disagreement as a constitutional challenge to the statute.  (Tr. Vol. III at 766).  Later, after an offer of proof on the intoxication issue, Owsley told the judge that he should have been

---

[2]Owsley's co-defendant, Marion Hamilton, pleaded guilty to second-degree murder and was sentenced to twenty years imprisonment.  There is little or no evidence in the record that Owsley was offered the same opportunity to plead guilty to second degree murder.  There is some evidence, however, indicating that Hamilton initiated the drug-related crime because of a dispute he had with the victim.

allowed to introduce expert witnesses and that he would be pursuing it on appeal. The trial judge responded, "you've reserved that issue for appeal . . . [t]hat's preserved." (Tr. Vol. V at 1132).

One of the reasons for requiring proper preservation of issues at trial is so that the trial court is made aware of the contested issue and will have the first opportunity to correct an error. See Murray v. Carrier, 477 U.S. 478, 487 (1986). Here, the objection was raised early in the proceedings, clearly notifying the trial court of the issue. See, e.g., State v. Barrington, 95 S.W. 235, 252 (Mo. 1906) (holding that issue is preserved "if the objections at the trial were sufficiently specific to notify the trial court at the time of the nature and character of the objections and the reasons for them."); State v. Flynn, 519 S.W.2d 10, 12 (Mo. 1975); State v. Tygart, 673 S.W.2d 83, 87 (Mo. Ct. App. 1984). As the district court correctly held, Owsley's colloquy with the court sufficiently preserved the intoxication issue for appellate review, and the Missouri Supreme Court's refusal to review the claim does not constitute an adequate and independent state law ground for barring our review.

B. Content of the Excluded Evidence

During Owsley's offer of proof, a number of witnesses testified that Owsley was intoxicated on the day of the murder. Owsley's mother testified that she had seen Owsley at 11:00 a.m., and that he was intoxicated and so "messed up" that he "couldn't hardly stand up." (Tr. Vol. V at 1103). At noon, a family friend saw Owsley, noticed that he was intoxicated, and told him to go home. (Tr. Vol. V at 1116-17). A different friend testified that he and Owsley smoked marijuana and PCP together later that afternoon. (Tr. Vol. V at 1109). Owsley's cousin testified that at approximately 4:45 p.m. she had seen Owsley leaving a liquor store. (Tr. Vol. V at 1112). When Owsley picked up his girlfriend from work at approximately 6:00 p.m., she drove the car home because of Owsley's intoxication. (Tr. Vol. V at 1120-21).

Further, in the penalty phase, Dr. Roswell Evans testified that Owsley had started drinking when he was seven or eight, and became a chronic substance abuser during his teen years. Evans also testified that PCP is a drug that can cause extreme reactions, and that if an individual who is high on PCP is "provoked in any way, they can become incredibly violent." (Tr. Vol. V at 1216). According to Evans, Owsley had "a schizoid personality" and Owsley had "the capacity to become violent and to do unplanned kinds of crimes. " (Tr. Vol. V at 1219-20). Further, Evans stated, "[i]t's my opinion that he was intoxicated and at the time was not able to cooly reflect and deliberate his actions." (Tr. Vol. V at 1222-23). Another expert witness, Dr. Robert Briggs, also agreed that at the time of the killing Owsley had no impulse control. (Tr. Vol. VI at 1321-22). Had the lay witnesses, Dr. Evans, and Dr. Briggs been allowed to testify during the guilt phase of the proceedings, they would have offered evidence that Owsley was intoxicated and could not have deliberated the killing.

C.      Constitutionality of the Missouri Statute Excluding Evidence of Intoxication

In Montana v. Egelhoff, 518 U.S. 37 (1996), four justices wrote that Montana's exclusion of voluntary intoxication evidence amounted to an exclusion of relevant exculpatory evidence and was a violation of due process. As Justice O'Connor stated, "Unless a defendant is proved beyond a reasonable doubt to have possessed the requisite mental state, he did not commit the offense. Elimination of a critical category of defense evidence precludes a defendant from effectively rebutting the mental-state element, while simultaneously shielding the State from the effort of proving the requisite mental state in the face of negating evidence." Id. at 70. Four other justices wrote that the State of Montana could constitutionally define the mens rea for a crime to forbid a defense of voluntary intoxication.

As a result of this even split on the Court, Justice Ginsburg's concurring opinion constitutes the applicable law. In her concurrence, Justice Ginsburg wrote that the difference between the two conflicting views came down to whether the Montana

statute merely redefined the mens rea for a crime, or whether the statute was more properly categorized as excluding exculpatory evidence. Justice Ginsburg went on to analyze the Montana statute, looking at its text and its codification in relation to other statutory provisions. Ultimately, she concluded that the Montana statute was more properly classified as a redefinition of the mens rea for an offense, and that therefore the Montana statute was constitutional. See id. at 58.

After examining the Missouri statute, Mo.Ann.Stat. § 562.076.3, I am convinced that it is unconstitutional under Justice Ginsburg's concurrence because the statute excludes relevant exculpatory evidence. The Montana statute found to be constitutional in Montana v. Egelhoff never uses the word "evidence":

> A person who is in an intoxicated condition is criminally responsible for his conduct and an intoxicated condition is not a defense to any offense and may not be taken into consideration in determining the existence of a mental state which is an element of the offense unless the defendant proves that he did not know that it was an intoxicating substance when he consumed, smoked, sniffed, injected, or otherwise ingested the substance causing the condition.

Mont. Code Ann. § 45-2-203 (1999). On the other hand, the Missouri Statute repeatedly uses the word "evidence":

> 1. A person who is in an intoxicated or drugged condition, whether from alcohol, drugs, or other substance, is criminally responsible for conduct unless such condition is involuntarily produced and deprived him of the capacity to know or appreciate the nature, quality or wrongfulness of his conduct. 2. The defendant shall have the burden of injecting the issue of intoxicated or drugged condition. 3. Evidence that a person was in a voluntarily intoxicated or drugged condition may be admissible when otherwise relevant on issues of conduct but in no event shall it be admissible for the purpose of negating a mental state which is an element of the offense. In a trial by jury, the jury shall be so instructed when

evidence that a person was in a voluntarily intoxicated or drugged condition has been received into evidence.

Mo. Ann. Stat. § 562.076. (emphasis added). Furthermore, the Missouri Supreme Court in regard to this statute has stated:

The second aspect of the rule is that a jury may not consider intoxication on the issue of the defendant's mental state. Exclusion from consideration of evidence of voluntary intoxication in no way relieves the state of its burden of proof. The state is still obliged to prove all elements of the offense, including the mental state, beyond a reasonable doubt. The . . . rule merely treats a sober person and a voluntarily intoxicated person as equally responsible for conduct. The rule . . . does not violate due process. . . . The state's remedy when a defendant attempts to introduce evidence of intoxication on the issue of state of mind is to object to the relevancy of the evidence.

State v. Erwin, 848 S.W.2d 476, 482 (Mo. 1993) (emphasis added). In the opinion the Missouri Supreme Court uses the term "evidence" repeatedly, rather than discussing a redefinition of the mens rea needed to be convicted of a crime.

Both the language of the statute and the opinions of the Missouri Supreme Court indicate that § 562.076.3 works to exclude exculpatory evidence. To be convicted of first degree murder, the State had to prove that Owsley "knowingly caus[ed] the death of another person after deliberation upon the matter." Mo. Ann. Stat. § 565.020.1. Here, in effect, the State was relieved of its burden of proof on the issue of deliberation. The ultimate result was that Owsley was unconstitutionally denied the right to present evidence in his defense to show that he could not have deliberated the killing.

-10-

## II. IRRECONCILABLE CONFLICT WITH COUNSEL

A. Description of the Conflict

Over one year before trial was to commence, Owsley moved to dismiss trial counsel, James McMullin. When that motion was overruled, Owsley filed another motion to dismiss on September 29, 1993. Owsley described the difficulty he and McMullin were having communicating, listed the arguments that they had, and alleged that McMullin had breached confidentiality by telling another client that Owsley was a "liar." After a hearing on the motion on January 20, 1994, McMullin wrote to inform the court that Owsley was refusing to meet with him. On that same day, McMullin wrote to Owsley and stated that he had asked the judge to dismiss him from the case. However, on January 27, 1994, McMullin asked the court to disregard his previous letter, as he and Owsley were on speaking terms again.

As the trial approached, the tensions between Owsley and McMullin intensified. McMullin filed a motion to replace counsel, stating that it would be in the best interests of all parties if he were relieved from the case. At the hearing held on October 12, 1994, Owsley again described the communication problems, and told the court that McMullin had called him a "pain in the ass" to others at the jail. Owsley told the court that McMullin had not been investigating his case adequately, and that it appeared counsel was "overworked." (Tr. Vol. I, Oct. 12, 1994, at 19). McMullin then asked to be dismissed from the case. (Tr. Vol. I Oct. 12, 1994, at 20). Despite McMullin's request, the court denied the motion.

Throughout the pretrial motions, McMullin and Owsley disagreed about various matters. McMullin interrupted Owsley when he was speaking to the judge, and, at various points expressed his frustration with Owsley's efforts to work on his own behalf. It was obvious that McMullin and Owsley had not in any way coordinated their

presentation of these motions to the court, and that this haphazard response was the product of inadequate communication between the two.

On October 17, 1994, a hearing was held on Owsley's motion to dismiss counsel. Apart from detailing McMullin's inadequate preparation and recounting the arguments that had occurred, Owsley's motion also stated that McMullin had participated in a talk radio show and expressed his opinion that executions in death penalty cases should move forward more quickly. (Tr. Vol. I, Oct. 12, 1994, at 100). Further, Owsley asserted that McMullin was not on the public defender's list of approved counsel in death penalty cases. At the hearing, McMullin admitted that he was not on the "approved" list. (Tr. Vol. I, Oct. 12, 1994, at 101). Although McMullin again asked to be relieved of the representation, the court denied the motion. (Tr. Vol. I, Oct. 12, 1994, at 103). Despite these repeated requests for a change in representation from both Owsley and McMullin, the court refused to appoint substitute counsel.

B. Reviewing the Conflict

Rather than analyze the conflict between Owsley and trial counsel to determine if there was a Sixth Amendment violation, the majority focuses on the standard of review. See ante at 2. The majority opinion seems to imply that we can no longer examine existing Supreme Court precedent to determine an issue that has not been precisely decided by the Supreme Court. Although the majority relies on Williams v. Taylor, 120 S.Ct. 1495 (2000), it is clear from examining Williams that such a proposition is doubtful.

In Williams, Justice O'Connor wrote that "it will often be difficult to identify separately those state-court decisions that involve an unreasonable application of a legal principle (or an unreasonable failure to apply a legal principle) to a new context."

-12-

Id at 1521. Justice O'Connor left for another day the question of "how such 'extension of legal principle' cases should be treated [.]" Id.

Owsley has identified several Supreme Court cases that discuss the right to counsel in terms of a counsel free from conflict. See Holloway v. Arkansas, 435 U.S. 475 (1942); Wood v. Georgia, 450 U.S. 261 (1981). Moreover, there are cases within the Eighth Circuit that discuss irreconcilable conflicts of the type that exist in this case. See Smith v. Lockhart, 923 F.2d 1314 (8th Cir. 1991); United States v. Hart, 557 F.2d 162 (8th Cir. 1977); White v. White, 602 F.Supp. 173 (W.D. Mo. 1984). The test articulated by the Ninth Circuit examines the timeliness of the request for substitute counsel; the adequacy of the court's inquiry into a defendant's complaint; and whether the conflict was so great that it resulted in a total lack of communication and prevented an adequate defense. See United States v. Walker, 915 F.2d 480 (9th Cir. 1990).

Here, Owsley requested substitute counsel over a year before the trial was to begin. Both Owsley and McMullin asked numerous times that McMullin be dismissed from the case. It does not appear that this conflict was something created by Owsley; it appears to have been a mutual problem. In light of this communication problem between Owsley and McMullin, I cannot agree with the majority.

III. CONCLUSION

In conclusion, I believe that there were two serious errors in the proceedings below that require a new trial. First, Owsley was unconstitutionally denied the right to introduce evidence of his intoxication that would have tended to show that he did not have the capacity to deliberate, an element needed for a conviction for first degree murder. Second, the trial court failed to appoint substitute counsel for him after an irreconcilable conflict arose between Owsley and his counsel. For the forgoing reasons, I would grant Owsley a new trial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.