Michael OWSLEY, Petitioner,

v.

Al LUEBBERS, Superintendent, Respondent.

Michael Owsley, Appellant,

v.

Michael Bowersox, Appellee.

No. 02–1255, 99–3855.

United States Court of Appeals, Eighth Circuit.

Submitted: Jan. 30, 2002.

Filed: Feb. 5, 2002 (corrected 2/13/02).

be calculated. We cannot say that the district court's reliance on Mr. Chay's gross sales was an abuse of discretion.

Before HANSEN, HEANEY and MORRIS SHEPPARD ARNOLD, Circuit Judges.

PER CURIAM.

Michael Owsley is scheduled to be executed by the State of Missouri on February 6, 2002, at 12:01 a.m. Our court previously affirmed the district court's denial of Mr. Owsley's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See Owsley v. Bowersox,* 234 F.3d 1055 (8th Cir.2000). His petition for rehearing en banc was denied, and the Supreme Court denied his petition for writ of certiorari. *Owsley v. Luebbers,* —— U.S. ——, 122 S.Ct. 233, 151 L.Ed.2d 168 (2001). Seeking to readdress whether Missouri may constitutionally restrict a state defendant's right to present evidence of his voluntary intoxication as a defense in the guilt phase of a capital murder case, *see* Mo.Rev.Stat. § 562.076.3, Owsley has filed a motion to recall our mandate in *Owsley v. Bowersox.* Owsley relies on the Supreme Court's re-

cent decision in *Lee v. Kemna*, 534 U.S. 362, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002), and suggests in light of that decision that we erroneously concluded that his constitutional challenge to § 562.076.3 was barred on an independent and adequate state ground-the Supreme Court of Missouri's determination that Owsley failed to preserve his challenge for appellate review by properly raising the due process constitutional issue before the state trial court. *See Owsley*, 234 F.3d at 1058–59; *Mo. v. Owsley*, 959 S.W.2d 789, 795 (1997) (en banc).

We deny the motion to recall our earlier mandate and write to explain our reasons. Contrary to the dissent's conclusion, the Supreme Court explained in *Calderon v. Thompson*, 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998), that the Anti–Terrorism and Effective Death Penalty Act's (AEDPA's) provisions regarding second or successive habeas petitions do govern our ability to recall our mandate under the circumstances presented here.

In a § 2254 case, a prisoner's motion to recall the mandate on the basis of the merits of the underlying decision can be regarded as a second or successive application for purposes of § 2244(b). Otherwise, petitioners could evade the bar against relitigation of claims presented in a prior application, § 2244(b)(1), or the bar against litigation of claims not presented in a prior application, § 2244(b)(2). If the court grants such a motion, its action is subject to AEDPA irrespective of whether the motion is based on old claims (in which case § 2244(b)(1) would apply) or new ones (in which case § 2244(b)(2) would apply). *Id.* at 553, 118 S.Ct. 1489; *see also Thompson v. Nixon*, 272 F.3d 1098, 1100 (8th Cir.2001) ("A motion to recall a mandate is analyzed as a successive petition under [AEDPA].").  Thus, according to *Calderon*, we must determine whether the issue Owsley now attempts to raise in support of his motion to recall the mandate falls within § 2244(b).  Our review is not merely to determine whether Owsley is "simply seeking to preserve his right to a full and fair appeal." *Infra* at 8. The standard for recalling a mandate in habeas corpus cases is a strict one, and the power to recall a mandate is "one of last resort, to be held in reserve against grave, unforseen contingencies." *Calderon*, 523 U.S. at 550, 118 S.Ct. 1489.

Section § 2244(b)(1) prohibits a petitioner from raising a claim that was previously raised in an earlier habeas proceeding.  Because Owsley attempts to raise the very same constitutional challenge to Mo.Rev.Stat. § 562.076.3 in his current motion that he raised in his initial habeas proceeding, and one which we already have addressed, he is barred from again asserting it as grounds for the writ. The only feature distinguishing his present argument from his past one is that he is now armed with fresh Supreme Court precedent on what constitutes an independent and adequate state ground, which is sufficient to bar a constitutional challenge in federal court.  Even if we interpreted Owsley's motion as one seeking to raise a new claim based on *Lee v. Kemna*, our authority to recall the mandate would be foreclosed by § 2244(b)(2): The Supreme Court did not announce in *Lee v. Kemna* a new rule of constitutional law made applicable by the Supreme Court to cases on collateral review.

But even if we were able to escape AEDPA's limitations, *Lee v. Kemna* would have no bearing on our earlier determination that federal review of the constitutionality of § 562.076.3 is barred.  As the Supreme Court indicated in *Lee*, there is only a "small category" of cases in which a state

ground will be inadequate to bar federal review of a constitutional challenge. *Lee*, 534 U.S. 362, at ——, 122 S.Ct. 877, 888, 151 L.Ed.2d 820, at ——. The Court went so far as to say it would only occur in an exceptional case involving the state court's "exorbitant application of a generally sound rule." *Id.* at 885. The Court ultimately determined that the Missouri court's enforcement of its "motions for a continuance must be in writing" rule could not bar federal review because the petitioner substantially complied with the rule and enforcement of the rule served no real governmental interest.

This case is not *Lee*. Here, Owsley completely failed to comply with Missouri's rule regarding constitutional objections. Although Owsley objected to the preclusive application of the Missouri statute to his evidence of his voluntary intoxication, he did so only in the most general terms of disagreeing with the law as adopted by the Missouri legislature. We have carefully reread the portions of the transcript cited in the appellant's brief as making "it clear that [he was] challenging the constitutionality" of § 562.076.3. *Infra* at 691. One looks in vain for any hint of a constitutional challenge. Neither the words "unconstitutional" or "due process" appear anywhere in either the defendant's or his counsel's argument to the trial court. Nor did he make any constitutional objection to the statute in a motion for a new trial. As we pointed out in our prior opinion, under Missouri law, "'the sections of the Constitution claimed to have been violated must be specified; the point must be preserved in the motion for new trial, if any; and it must be adequately covered in the briefs.'" *Owsley*, 234 F.3d at 1058 (quoting *Magenheim v. Bd. of Educ.*, 340 S.W.2d 619, 621 (Mo.1960)). Consistent enforcement of a rule requiring a specific constitutional objection serves a valuable governmental interest by promoting judicial efficiency and by making sure that constitutional objections to legislative acts receive focused attention from the courts. Its importance is reflected by the frequency of its use by the Missouri appellate courts and by our court. *Cf. Voss v. Shalala*, 32 F.3d 1269, 1272–73 (8th Cir.1994) ("To the extent that [plaintiff] attempts to raise a constitutional challenge to the statute, we decline to address it. . . . Her constitutional arguments . . . are offered undigested. . . . Assessing the constitutionality of a statute is the most delicate task of a federal court. A litigant cannot require constitutional adjudication by incanting magic spells or pointing a finger at a particular clause." (internal quotations omitted)).

■■■ Finally, even presuming our ability to reach the *actual* merits of Owsley's constitutional challenge, our panel would be bound by *Gary v. Dormire*, 256 F.3d 753 (8th Cir.2001), in which our court held that § 562.076.3 passes due process muster. The *Gary* court, relying on *Montana v. Egelhoff*, 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996), plainly held that:

> Missouri treats voluntarily intoxicated individuals and sober individuals equally culpable for criminal activity. It accomplishes this by giving evidence of voluntary intoxication no relevance insofar as the mental elements of the crime are concerned. Because evidence of voluntary intoxication has no exculpatory relevance under Missouri law, a criminal defendant has no corresponding constitutional right to have the jury consider this evidence.

*Gary*, 256 F.3d at 759. It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel. *United States v. Prior*, 107 F.3d 654, 660 (8th Cir.1997). We therefore are not free to avoid the clear holding of the *Gary* court.

Accordingly, we deny Owsley's counseled motion to recall our mandate in No. 99–3855. We also deny Owsley's pro se motion seeking authorization to file a successive habeas petition in the district court in No. 02–1255. All pending motions for a stay of execution are also denied.

HEANEY, Circuit Judge, dissenting.

There is no doubt in my mind that if this court considered Michael Owsley's claim on the merits, it would conclude that the state trial court erred in denying Owsley the right to introduce evidence of his intoxication at the time of the act for which he was sentenced to death.

So that a reviewing court, including this court en banc, will have all of the facts before it in a single document, I repeat much of what I said in my dissent of December 11, 2000:

> During Owsley's offer of proof, a number of witnesses testified that Owsley was intoxicated on the day of the murder. Owsley's mother testified that she had seen Owsley at 11:00 a.m., and that he was intoxicated and so "messed up" that he "couldn't hardly stand up." (Tr. Vol. V at 1103). At noon, a family friend saw Owsley, noticed that he was intoxicated, and told him to go home. (Tr. Vol. V at 1116–17). A different friend testified that he and Owsley smoked marijuana and PCP together later that afternoon. (Tr. Vol. V at 1109). Owsley's cousin testified that at approximately 4:45 p.m. she had seen Owsley leaving a liquor store. (Tr. Vol. V at 1112). When Owsley picked up his girlfriend from work at approximately 6:00 p.m., she drove the car home because of Owsley's intoxication. (Tr. Vol. V at 1120–21).

As I pointed out in my original dissent, the admissibility of Owsley's intoxication was first argued during a motion in limine.

"This issue was first brought to the attention of the trial court when the prosecution moved in limine to exclude this evidence in a pre-trial hearing the week before the trial." Tr. at 82–85. The petitioner's original brief to this court accurately sets forth precisely what happened at a late pre-trial hearing:

> Mr. Owsley again brought this issue to the trial court's attention ...: 'Can I ask one question? This is something I forgot to ask about. Intoxication, diminished capacity, does the defendant still have a right to introduce witnesses as to his state of intoxication?' Tr. at 115 .... '[W]hat I'm trying to say is this: I have several witnesses ... subpoenaed that are willing to testify to my state of intoxication before the incident. What I am asking is, am I going to be allowed to present those witnesses at my trial?' Tr. at 116. Trial counsel put it very clearly: 'I'm going to try and put them in to show at the time of the alleged offense he was so intoxicated he couldn't form the intent to kill him and commit murder one. That is what he wants me to put on, and I am going to try and put it on.' ....
>
> Later, during the voir dire phase of the trial, Mr. Owsley ... made it clear that [he was] challenging the constitutionality of Missouri Revised Statute § 562.076. *See* transcript at 755–766. After an extended colloquy during which Mr. Owsley himself and his attorney both repeatedly asserted their desire to present defense witnesses to show that Mr. Owsley was too intoxicated to entertain the culpable mental state required for first degree murder, the trial court stated (referring to § 562.076) 'That's the statute and it was passed.' Trial counsel responded, 'By the legislature. We don't agree with the legislature.' The trial court expressed in no un cer-

tain terms its appreciation of the nature of Mr. Owsley's claim: 'It may be unconstitutional, I don't know, but we are stuck with it. That is the law.' Tr. at 766.

Again, after making an offer of proof with regard to the evidence of intoxication, [counsel stated]: 'Your Honor, that is all of my witnesses on my offer of proof as to why they should be allowed to show in the first half of the trial under diminished capacity that he could not form the mental requirement of deliberation to commit murder one.' Tr. at 1124. Again, the state rested its objection to the testimony on the challenged statute. *Id.*

Mr. Owsley personally reasserted his right to call witnesses as to his intoxication, and advised the trial court, 'I will be pursuing it on appeal if necessary, that I should have been allowed those witnesses in the first half.' Tr. at 1131–2. The trial court responded, 'Yeah, and you're right. You've reserved that issue for appeal ... if you need it, that's right. That's preserved.' *Id.* At 1132....

I continue to believe that the record was more than sufficient to preserve the issue of the constitutionality of Mo. Stat. § 562.076 as construed by the Missouri Supreme Court. As I stated in my dissent:

[A principal] reason for requiring proper preservation of issues at trial is so that the trial court is made aware of the contested issue and will have the first opportunity to correct an error. *See Murray v. Carrier*, 477 U.S. 478, 487, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Here, the objection was raised early in the proceedings, clearly notifying the trial court of the issue. *See, e.g., State v. Barrington*, 198 Mo. 23, 95 S.W. 235, 252 (1906) (holding that issue is preserved "if the objections at the trial

were sufficiently specific to notify the trial court at the time of the nature and character of the objections and the reasons for them."); *State v. Flynn*, 519 S.W.2d 10, 12 (Mo.1975); *State v. Tygart*, 673 S.W.2d 83, 87 (Mo.Ct.App. 1984). As the district court correctly held, Owsley's colloquy with the court sufficiently preserved the intoxication issue for appellate review, and the Missouri Supreme Court's refusal to review the claim does not constitute an adequate and independent state law ground for barring our review.

If Owsley's right to have a federal court rule on the constitutionality of the Missouri statute as construed by the Missouri trial court and affirmed by the Missouri Supreme Court was not clear before, it certainly is now.

On January 22, 2002, the United States Supreme Court handed down an opinion in *Lee v. Kemna*, 534 U.S. 362, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002). That case makes it abundantly clear that "there are exceptional cases in which exorbitant application of a generally sound rule renders the state ground [weak as it is here] inadequate to stop consideration of a federal question." *Id.* at 878. Moreover, because Owsley is simply seeking to preserve his right to a full and fair appeal, his request to recall the mandate of this court is not a second or successive petition. *Calderon v. Thompson*, 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998).

In *Lee*, the Supreme Court mentioned three factors which should be considered in determining whether a case "falls within the small category of cases in which asserted state grounds are inadequate to block adjudication of a federal claim." *Lee*, at 888.

First, the court noted that the trial judge stated the reason for its action had nothing to do with compliance with state

rules. Here, the trial judge stated that Owsley's constitutional claim could be considered on appeal. Thus, this case is stronger than *Lee*. Second, the court stated that no published decision of the Missouri Supreme Court required literal compliance with published rules. Here, there not only was compliance, but as I see it, literal compliance. Third, the court inquired as to whether the purpose of the rule was served by the defendant's action. Here, the purpose of giving state courts an opportunity to first consider the question was clearly met.

With deep respect to my colleagues, I must vigorously disagree with what I consider to be the heart of their argument, i.e., that "Owsley made no serious or specific challenge to the statute that would have supported a ruling in his favor, and the Missouri Supreme Court's requirement that an appellant must lodge more than a vague objection in the trial court to preserve a constitutional challenge." Having read and reread counsel's statement at trial, I cannot see how he could have been more precise than he was.

I recognize that the state points out that a panel of our court in *Dormire* stated that § 562.076.3 passes due process muster. In my view, however, this statement was dicta. It is dicta because in *Dormire* the panel recognized that the petitioner's challenge to the statute was never presented, let alone adjudicated on the merits, in state court. Here, as I have pointed out, the matter was presented to the state court.

Moreover, as I stated in my original dissent, there is a critical difference between the Montana statute held valid in *Egelhoff* and the Missouri statute at issue here; a difference that, in my view, requires a holding, at least as applied to the facts of this case, that the Missouri statute fails to meet the constitutional standards of due process.

I would recall our mandate and permit the issue to be thoroughly briefed and argued before the court en banc if necessary, and thus uphold the rule of law so precious to all of us.